[Civ. No. 1266. Third Appellate District.—February 5, 1915.]

## MARY L. MERCHANT et al., Respondents, v. JOHN D. GRANT, Appellant.

BOUNDARIES — HIGHWAY — PRESUMPTION AS TO OWNERSHIP. — Where a public street or highway is made a boundary of land the owner is presumed to own to the center of the street or highway, and a transfer of land bounded thereby passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof, unless a different intent appears from the grant.

ID.—OMISSION TO DESIGNATE HIGHWAY AS BOUNDARY—DIFFERENT INTENT NOT SHOWN.—A different intent is not shown in a grant of land which in fact abuts upon a street or highway from the omission to designate the street or highway therein as the boundary.

ID.—CASE AT BAR—PUBLIC ROAD AS BOUNDARY—FINDINGS SUPPORTED BY EVIDENCE.—In this action to quiet title to a strip of land alleged to be bounded on the south by a county road, it is held that the

court was justified from the evidence in finding that two certain deeds under which plaintiffs claim title were intended to make the said county road the southern boundary of the land, notwithstanding that such deeds made no mention of the county road or reference to it in any way as constituting such boundary.

APPEAL from an order of the Superior Court of Sonoma County denying a new trial.   Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

J. T. Coffman, for Appellant.

T. J. Butts, for Respondents.

CHIPMAN, P. J.—This is an action to quiet plaintiffs' title to a strip of land 243 feet long, 13 feet wide at its eastern end and 16 feet wide at its western end and alleged to be bounded on the south by the county road running from Healdsburg to Santa Rosa, in Sonoma County.   The court made findings in favor of plaintiffs and entered its decree accordingly.   Defendant appeals from the order denying his motion for a new trial.

It is conceded that defendant is the owner of the land in dispute unless the court was justified from the evidence in finding that two certain deeds under which plaintiffs claim title were intended to make the said county road the southern boundary of the land.

On June 11, 1887, John D. Grant and S. Cohn conveyed to William Van Alen a block of land 36 feet wide and 168 feet long, bounded on the north by the right-of-way land of the San Francisco & North Pacific Railroad Company and from the point of beginning at the railroad land the line ran at right angles to the railroad track southerly 36 feet, "thence at right angles parallel with said railroad 168 feet; thence at right angles northerly 36 feet to railroad property; thence westerly at right angles along railroad property to place of beginning; and canning rights, etc." This block of land had been in use for and on it had been erected a warehouse covering nearly the entire tract.   On November 7, 1887, Grant and wife conveyed to Van Alen a strip of land described as "commencing at the southeast corner of the warehouse lot, thence 6 feet southerly on line with easterly line of warehouse lot; thence westerly 243 feet parallel with south line of warehouse

lot; thence northerly and at right angles 42 feet to railroad line; thence easterly 75 feet to the northwesterly corner of warehouse lot; thence southerly and easterly following line of said warehouse lot to the point of beginning.'' By this deed a strip of land 6 feet wide was added to the south side of the warehouse lot first above described, and also a piece on the west 42 feet wide and 75 feet long, the two deeds thus conveying a block of land 42 feet wide and 243 feet long. The land in controversy is an additional strip, as above stated, along the southern boundary of this block of land, 13 feet wide at its eastern end and 16 feet wide at its western end. No mention is made, in either of these deeds, of the county road or reference to it in any way as constituting the south boundary of the land in question. Appellant contends that the block of land, described by these two deeds, cannot be extended beyond the metes and bounds mentioned therein; that the strip of land in controversy lies between the highway and the land conveyed by these deeds and is part of a tract of land to which he holds title from the same ancestor in estate as the one through whom plaintiff's claim title. Plaintiff's claim that the county road was in fact the southern boundary of the land conveyed by these deeds and although not made so by their terms the fact that the southern boundary coincided with the northern boundary of the road, i. e., that the land conveyed was intended to be so bounded, the result is the same as if the deeds had so declared.

There was evidence that a county road leading from Healdsburg to Santa Rosa and passing south of the land in controversy has been in existence and traveled by the public for more than fifty years; that a warehouse was built on the land described in the deed dated June 11, 1887, about the time the said railroad was completed to Healdsburg, in 1872 or 1873, and the land had been known thereafter as the warehouse lot. The established location of the north and south lines of the county road at this point was not shown farther than it seems to have been conceded that the southern boundary of the county road was marked by a fence and this boundary remains unchanged. There was evidence that the warehouse was used by the public for storing grain and hay for several years—up to 1887 and probably a little later (the witnesses were not certain as to dates) when Van Alen converted it into a cannery and so used it until it burned down about 1894, since which time the land

has been unoccupied for any purpose and has been open on all sides except on the line of the railroad. Describing the situation, witness Petray testified: "South of the warehouse and this parallelogram (referring to the plat of ground as shown on the map used at the trial) there was just a county road and open space. The county road was wider there, all of what we called the county road, and it went up to the platform of the warehouse. . . . As long as I can remember (he had been familiar with the premises for 40 years) there was no obstruction between the warehouse lot and the county road. People going to and coming from the warehouse just simply pulled off a little to one side of the road to get to the platform of the warehouse. The platform of the warehouse was next to the county road. I never heard of any objection to the public traveling there. I have traveled there myself and I have passed on the road and rode up to the warehouse with my father many times. No objection was made to my going there. I know it was a public warehouse and neighbors hauled and stored there."

Witness Pettis testified: "When the warehouse was put there there was nothing to the south of it but a wagon road. The width of the wagon road there at that time was the whole thing just from the warehouse—the warehouse was 30 feet wide and 150 feet long. . . . The space next to the warehouse, the 13 feet on the east and 16 feet on the west, was never used for anything since I can remember, that I know of. People got to the warehouse by driving along the wagon road, they had no other way than over this strip of land. . . . I never knew of any objections being made to the people traveling on that road. I traveled over it myself for the last 42 years."

There is abundant evidence that while Grant Sr., owned the land and warehouse and while Van Alen owned it, the owners treated the space south of the tract occupied by the warehouse as part of the county road and the evidence would seem to warrant the conclusion that they intended to and did dedicate to the public for the purposes of a highway the land south of the warehouse lot. (*Barnes* v. *Daveck,* 7 Cal. App. 487, [94 Pac. 779].) Appellant suggests that the second deed, made in November, 1887, indicates a contrary purpose. Why this deed was made does not appear. It is altogether probable that this additional six feet was conveyed to make more certain that the tract was intended to extend to the highway. We

cannot say from any evidence in the record, precisely where the north boundary of the road was with reference to this tract of land, for there was no evidence of its definite location.   All we know is that the land south of the warehouse lot was given over by its owners to the public for and was used by the public as a public road from 1872 to about 1894.   This would seem to fix the *status* of the land and if the north line of the road has since been definitely located along the south boundary of the strip of land in controversy and this latter is no longer used or needed by the public it would seem but just that it should belong to plaintiffs and that the southern boundary of their land should be the highway.   Any other view would make their land absolutely inaccessible from any direction.   Furthermore. it is not probable that Van Alen would have purchased the land if it had been surrounded by lands of his grantor with no access to the land he purchased.

In its decree the court described the property claimed by plaintiffs so as to locate the south boundary along "the center of said Santa Rosa and Healdsburg road 243 feet."   This was on the theory that the intention of the grantors was to make the road the boundary of the land and hence conveyed the fee to the center of the road subject, of course, to the easement enjoyed by the public.   The evidence would seem to justify this conclusion.

It is undoubtedly the rule that where a public street or public highway is made a boundary of land the owner is presumed to own to the center of the street or road (Civ. Code, sec. 831); and "a transfer of land bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof, unless a different intent appears from the grant." (Civ. Code, sec. 1112.)

We do not think that where the land as described in fact abuts upon a street or highway, though the street or highway be not mentioned as the boundary, the grant necessary shows "a different intent."   The rule is well established that the conveyance of a lot bounded upon a street in a city carries the land to the center of the street.   And it was held in *Bissell* v. *New York etc. R. Co.*, 23 N. Y. 61, "there is no distinction in this respect between streets of a city and county highways."   The rule, it was said, "seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve

his interest in the street when he had parted with his title to adjoining land, such intention will never be presumed.'' (2 Devlin on Real Estate, sec. 1028a, 3d ed.) In *Sizer* v. *Devereux,* 16 Barb. (N. Y.) 160, it was held that ''when in the deed of land the description of the lines is by courses and distances and no road is named, but by proof on trial it appears that one line must be on a road, the land to the center of the road is included.'' In *Champlin* v. *Pendleton,* 13 Conn. 23, the south line of the land conveyed was the same as the north line of the highway, although the highway was not mentioned or referred to in the deed, and it was held that the fee passed to the center of the highway. It would seem to us to be unreasonable to hold that the grantors of Van Alen intended to retain in themselves the ownership of the land included in the highway which could have been of no possible use to them and might result to the serious injury of their grantee. All the circumstances and facts are opposed to any such presumption.

There are some other questions presented by appellant's brief but the case in fact turns upon the effect of the deeds above considered and the evidence in respect of the intention of the grantors. All other questions are of minor importance and do not call for special mention.

The order is affirmed.

Hart, J., and Burnett, J., concurred.