[Civ. No. 27141. Second Dist., Div. Four. April 21, 1964.]

LOS ANGELES CITY HIGH SCHOOL DISTRICT, Plaintiff and Respondent, v. MILO M. SWENSEN et al., Defendants and Appellants.

Arthur Garrett for Defendants and Appellants.

Harold W. Kennedy, County Counsel, and Alfred Charles DeFlon, Deputy County Counsel, for Plaintiff and Respondent.

BURKE, P. J.—Residential property in Berkeley Square, in Los Angeles, was condemned in eminent domain proceedings for use as a public school site. Two actions were consolidated for trial and six parcels of property were involved. Judgment based upon special verdicts for each defendant, awarding compensation, was entered from which two of the defendants appeal.

Berkeley Square Tract was created by its subdivider as a highly restricted residential area consisting of a rectangular plot divided by a common private driveway approximately 120 feet in width on which fronted 30 lots, each approximately 80 feet by 250 feet in dimension. Service driveways, or alleys, 20 feet in width, abutted the rear of each lot. The common driveway and alleys were not dedicated to public use and the residential exclusiveness of the tract was made manifest by large, filigreed, iron gates at its entrances from the public thoroughfares. Inscribed on the subdivision map is language which "reserved" to the several owners of the lots in the tract and to their successors easements over the common driveway, or street, and the alleys.[1]

The principal contention of defendants on appeal relates to a claimed fee simple interest owned by the defendants in the land comprising the common street and alleys and the denial to them by the court of severance damage therefor in the judgment awarding damages. The record is silent as to any grant to defendants or to their predecessors in interest of a "fee simple" interest in the land underlying the "easements" in the streets and alleys. While the term "reserved" was used by the subdivider in dedicating the streets and alleys for the common use of the grantees, it is to be noted that the reservation is not "reserved to the grantor" but

---

[1] "The undersigned hereby acknowledge and declare that they are the owners of the above tract of land enclosed within the red colored lines; that said tract has been subdivided at their request and this map correctly shows the subdivision of said tract into lots and private driveways.

"No part of said property is intended to be or is dedicated for public use. The private driveways indicated on this map are reserved as private driveways for the perpetual and irrevocable use of the owners of lots shown on this map and their successors, devisees and assigns as appurtenant to such lots and each thereof, that is to say, the said 20 foot driveways are to be used as a passage way for the hauling and carriage of heavy and bulky articles and for all ordinary passage purposes, and for the erection of poles and the laying of pipes and sewers thereon and therein; and the said 120 foot private driveway to be used as a passage way for pedestrians and for light and pleasure vehicles only."

"reserved ... for the perpetual and irrevocable use of the owners of lots. . . ." The subdivider reserved nothing unto himself and no language in any grant to any grantee of such lots, introduced in evidence, indicates any "different intent" (Civ. Code, § 1112) than to pass title, by implied inclusion, to the purchaser to those portions of the street and alleys bounding the respective lots. As distinguished from the easements, if defendants acquired any fee simple interest in the land underlying the street and alleys, it came to them by operation of law. Section 1112 of the Civil Code provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." As stated, there is no evidence in the record showing a "different intent" on the part of the original subdivider to retain title to the property underlying the easements. In the case of *Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386, 393 [197 P. 113], it is stated: "[T]he fee in the half of the street upon which the lot abuts is in fact a part of the lot, so that a conveyance of the lot conveys the fee in the street as a part of it."

However, section 1112 operates only to convey title to streets and alleys bounding a particular lot and conveys no interest to the so-called common property underlying the streets and alleys in the entire tract. The only common interests acquired by dedication were the easements over the common street and alleys and these interests were specifically condemned and the owners were compensated therefor. The final order of condemnation reads, in part, as set forth in the footnote.[2]

---

[2] "NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the real property as hereinafter specifically described, together with any and all improvements thereon be and the same is hereby condemned as prayed for and that the plaintiff as above named does hereby take and acquire the real property interests as hereinafter set forth in said real property for the public purposes set forth in the complaint on file herein, all of which property is situate in the County of Los Angeles, State of California:

"The fee simple title in and to the following described real property:

"*PARCEL 2*:

"Parcel 1:

"Lot 16 of Berkeley Square, as per map recorded in Book 8 page 61 of Maps, in the office of the County Recorder of said county.

"Parcel 2:

"An easement over the private driveways as shown on the map

The general rule of implied conveyance of title to the center of a highway has likewise been applied to alleys, subject to the usual limitations such as words in the deed showing a contrary intention. But an intent on the part of a grantor to withhold his interest in the alley will never be presumed. (*Wiess* v. *Goodhue,* 46 Tex.Civ.App. 142 [102 S.W. 793].) In California the rule is specifically set forth in the code, as above cited, for "highways," but the reasoning would be the same for alleys: "[T]here is no object in the grantor's retaining a narrow strip of land which is of little or no use or value to him when separated from the adjoining land (*Brown* v. *Bachelder,* 214 Cal. 753 [7 P.2d 1027]); that the value of the land to a purchaser would be greatly affected if the abutting street were not included in the conveyance (*Texas Bitulithic Co.* v. *Warwick* (Tex.Com.App.) 293 S.W. 160, reversing *Warwick* v. *City of Waxahachie* (Tex. Civ. App.) 288 S.W. 516; 9 C.J. 197, notes 71, 75); that such a rule will guard against litigation and disputes between owners of land adjacent to public highways (*Bowers* v. *Atchison, T. & S.F. Ry. Co.,* 119 Kan. 202 [237 P. 913, 42 A.L.R. 228]); that retention of such a narrow strip of land would retard the improvement and further alienation of the adjoining property (*MacCorkle* v. *City of Charleston,* 105 W.Va. 395 [142 S.E. 841, 58 A.L.R. 231]); and that 'if no other reason could be assigned of this rule ... the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great

---

of said Berkeley Square, as per map recorded in book 8 page 61 of Maps, in the office of the County Recorder of said county, to be used in common with other owners in said tract, as set forth in recitals on said map as follows:

" 'The "Private driveways" indicated on this map are reserved as private driveways for the perpetual and irrevocable use of the owners of lots shown on this map and their successors, devisees and assigns as appurtenant to such lots and each thereof, that is to say, the said 20 foot driveways are to be used as a passage way for the hauling and carriage of heavy and bulky articles and for all ordinary passage purposes and for the erection of poles and the laying of pipes and sewers thereon and therein; and the said 120 foot private driveway to be used as a passage for pedestrians and for light and pleasure vehicles only.'

"EXCEPTING all oil, gas, and mineral rights below a depth of 100 feet but without the right of surface entry thereto, also excepting therefrom underground pipe easements below a depth of 100 feet for the purpose of producing or exploring for oil, gas, and other hydrocarbons and minerals but without the right of surface entry thereto."

weight.' (*Paul* v. *Carver*, 26 Pa. 223, 225 [67 Am.D. 413]; *9 C.J.* 197, note 75.)'' (11 C.J.S., § 35, p. 581.)

If Civil Code section 1112 passes title only to the center of the bounding street, what then occurs as to that half of the alley on which no lot, within this subdivision abuts?

Application of the rule which carries title to the highway's center, if the grantor owns so much, will of course result in the grantee's taking title to the whole of the abutting highway area if the conveyance is one of parcels lying opposite to each other and on the two sides of the highway. (49 A.L.R.2d 982, 999.) But where one subdivides his land into lots and blocks and files a plat thereof dedicating the indicated streets and alleys to public use, including an avenue along the eastern border lying wholly upon the premises of the dedicator, a purchaser of property on the other side of the avenue who traces his title from an entirely independent source takes no fee to any part of the avenue. (*Roberts* v. *Shell Pipe Line Corp.* (1943 Tex.Civ.App.) 175 S.W.2d 106.)

Applying the reasoning of the foregoing cases we hold that the deeds from the original subdividers to the predecessors in interest of defendants carried with them title to the entire width of the alley adjoining each parcel as well as the soil of the street to the center thereof.

The foregoing conclusions dispose of any claims for severance damages related to any purportedly retained fee simple interests of defendants in Berkeley Square since they held none.[3]

It follows that the court, quite properly, refused instructions proffered by defendants pertaining to severance damages.

 Defendants contend that the judgment is against the weight of the evidence as to market value of the real property condemned and that the judgment followed a verdict in which the alleged severance damage was deducted from the fair market value of the parcels condemned. Appraisers gave expert testimony on the value of the properties, defendants' appraisals uniformly exceeding the appraisals given by the appraiser called by the city school district. The verdict for parcel 5, defendants Ward's, was $63,819 and was within the range of the two appraisals given, namely,

[3] Excepting whatever interest in oil rights they may have, if any, since oil rights were excluded from the interests sought to be condemned.

$57,000 and $77,500. Accordingly, both the verdict and order denying a new trial are supported by substantial evidence.

In the case of parcel 4, defendant Swensen's, the verdict and judgment were for $33,141, which was less than the lower of the two appraisals, namely, $35,000. The higher appraisal, Swensen's, was $47,500. However, the record discloses several sales of comparable properties within the same tract, Berkeley Square, for prices less than such verdict, such properties being improved with buildings substantially larger in area than defendant Swensen's. In *Los Angeles County Flood Control Dist.* v. *McNulty*, 59 Cal.2d 333, 338 [29 Cal. Rptr. 13, 379 P.2d 493], the court stated, ''... in these circumstances the fact that the award of severance damages was $650 lower than the lowest expert estimate does not mean that the award was without support in the record.'' Accordingly, the verdict and judgment for Swensen are also supported by substantial evidence. ▆ The determination of the conflict, credibility, weight, sufficiency and probative value of evidence and the inferences therefrom is functionally the province of the trial court and such determination will not be disturbed on appeal when the record discloses substantial support therefor, in the absence of error, abuse of discretion or prejudicial misconduct. ▆ We cannot, therefore, accept defendants' theory that, since it might appear that the special verdicts were computed by a method of subtracting claimed severance damages from the larger appraised values, such verdicts were not properly computed nor supported adequately by evidence. In all but one case the verdicts resulted in amounts in excess of the appraisals given by the city school district's expert.

▆ Defendants contend the trial court erred by its rulings and instructions, claiming the court erroneously sustained objections to the testimony regarding the effect of zone change on property values. An examination of the record indicates the defendants were not prejudiced by the rulings of the trial court in this respect. ▆ In valuing property, ''The jury is entitled to and should consider those factors which a buyer would take into consideration in arriving at a fair market value, were he contemplating a purchase of the property. ...'' on the date of valuation. (*People* ex rel. *Dept. of Public Works* v. *Donovan*, 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].) The existence of a reasonable probability of a zone change in the near future is one of such factors. ▆ Evidence bearing thereon should have

been and was admitted. Defendants' appraiser was permitted to testify concerning the effect of freeway construction on zone changes; that the new Santa Monica Freeway would pass "[A]pproximately eighty feet southerly of the center line of the north alley" in Berkeley Square; that there was on the date of valuation a reasonable probability of a change of zone for the subject properties in the near future because construction on the freeway was in progress. He also testified that he considered a reasonable probability of zone changes in his appraisals for the defendants. The court instructed the jury: "Fair market value must ordinarily be determined by considering only the uses for which the property is both adapted and for which it is available. If the property is, therefore, not presently available for a particular use by reason of a zoning ordinance, you should disregard an opinion of its value which is based upon such a use unless you find from the evidence that there was a reasonable probability of a change in the zoning ordinance."

The cases hold that only probable zone changes in the near future may be properly considered by the jury. The above instruction was not limited as to time, and thus favored defendants. Defendants' objections relate to the court's sustaining of objections to the questions propounded to an appraiser seeking his opinion as cumulative evidence as to the probability of a zone change resulting from the freeway improvement. The trial court decided he was not qualified in this regard as an expert, though otherwise qualified to give competent appraisals of the values of the subject properties. The record reveals no abuse of discretion in this regard.

█ Defendants' contention that error was committed in the exclusion of evidence of reproduction costs may not be sustained. In the context in which the question was raised, Mr. Ward described in detail the quality and type of construction of his own improvements. As an owner and building contractor, he gave his own appraisal of his front dwelling, which he had renovated, of $73,500 and of the whole parcel of $125,000. On cross-examination plaintiff did not inquire into the subject of reproduction costs. On redirect examination an attempt was made to elicit the reproduction cost on a square foot basis, to which objection was made, and, after argument, the question was withdrawn. Accordingly, in addition to having been improper redirect examination, no error can be assigned for refusal to permit a witness to answer a question that had been withdrawn. Defendant Ward

on direct fully exhausted his rights to testify as provided by Code of Civil Procedure section 1845.5.

■ Defendants contend the court erred in excluding evidence of the sale of three parcels in the same tract, which were sold as a unit for $375,000. The three lots had a total of 270 feet of frontage, more than three times the normal lot size. The "living area" of the dwelling measured 22,000 square feet as compared to 4,259 for defendant Swensen and 4,181 for defendant Ward; one side of the property (250 feet) also fronted on Western Avenue, a principal business artery in the City of Los Angeles; the price also included indeterminate amounts for furniture and art objects which were included in the sale. In *County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 678 [312 P.2d 680], the court stated: " 'The sales of the other tracts must have been ... sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion.' "

In *People* ex rel. *State Park Com.* v. *Johnson*, 203 Cal.App. 2d 712, 719 [22 Cal.Rptr. 149] the court said, "It is recognized, of course, that the trial court has wide discretion to determine what are 'comparable properties.' " The trial court is to adjudge what are "comparables," not the witnesses. In the case under review there was no error in the trial court's exclusion of such testimony.

■ Defendants' objection to a consolidation of the cases for trial was predicated on the fact that several owners of the parcels were variously of the Caucasian, Negro and Oriental races and that each would suffer peculiar prejudices. In support of the motion for a consolidated trial plaintiff school district contended by an appropriate declaration that all parcels were in close proximity in the same tract; that the expert witnesses and counsel would be the same; that the total trial time would be decreased from 60 to 14 days. Discretion to consolidate is vested in the trial court. (Code Civ. Proc., §§ 1048, 1244, subd. 5.) No abuse of discretion is here shown.

Defendants' contention and objection regarding a diminution of their peremptory challenges due to such consolidation for trial are without merit in view of their specific stipulation that they would accept 18 such challenges. There is no

584

abuse shown and it is noteworthy that defendants did not, in fact, use all their available challenges. (*People* v. *Troutman*, 187 Cal. 313, 321 [201 P. 928].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied May 7, 1964, and appellants' petition for a hearing by the Supreme Court was denied June 16, 1964.