[Civ. No. 29765.   Second Dist., Div. One.   Apr. 22, 1966.]

FLORENCE B. EVERETT, as Administratrix, etc., Plaintiff and Appellant, v. STEPHEN J. BOSCH et al., Defendants and Respondents; MARGUERITE THOMSON et al., Interveners and Appellants.

Miller, Vandegrift, Middleton & Sackin and Thomas J. Middleton for Plaintiff and Appellant and for Interveners and Appellants.

Hill Farrer & Burrill and Albert J. Day for Defendants and Respondents.

LILLIE, J.—This is an appeal from a judgment quieting title to certain property in the Hollywood section of Los Angeles, specifically a strip of land immediately southwest of La Brea and Hollywood Boulevard which formerly was used by the Pacific Electric Railway for railroad purposes following a condemnation proceeding in 1899 giving that company's predecessor a right-of-way thereover. Such right-of-way or easement (35 feet in width) having been abandoned in 1954 or 1955, the trial court was called upon to determine whether respondents owned the underlying fee to the strip of property by reason of certain deeds from the original owner to their predecessors in interest. Having found that they did and having further determined that respondents were not guilty of laches in asserting their claims, the trial court's conclusions in such regard are challenged by the present proceeding. There are also subsidiary contentions which will be discussed hereinafter.

The common predecessor of all parties to this litigation was one Lizzie T. Hay.[1] As far back as 1893 she was the owner of more than 100 acres which were subdivided in that year as the Formosa Tract and later subdivided (in 1906) as the J. F. Grass Tract. Appellant Everett is the present owner of Lot 12 in said tract; appellants Thomson and Hansel are the owners

---

[1] She was named as a defendant and thereafter defaulted—service being by publication.

of Lot 11. As will be seen from a sketch of the area reproduced herein, both such lots border on the northerly limits of the abandoned right-of-way. Respondents, on the other hand, own the northerly portions of Lots 30 and 31 in the Michigan Tract; as will likewise be noted from the accompanying sketch, such lots lie immediately south of the right-of-way save for the intervening alley known as Marshfield Way.

In 1902, following the acquisition of the easement by the railway company, Mrs. Hay conveyed the area north of such right-of-way to one See who later subdivided it in 1906 as the J. F. Grass Tract, *supra.* In this regard the trial court made a finding that by such conveyance the grantor intended to, and did, transfer to See, as grantee, ''the property within the

NOTE:

Dark shading indicates portion of Right of Way Claimed by Bosch (B)
Dark Cross Hatch indicates portion of Right of Way Claimed by Everett (E)
Dots indicate portion of Right of Way Claimed by Thomson & Hansel (T-H)

'northwesterly one-half of said easement and right of way" but subject thereto. (Appellants, as successors in interest of See, were found to be the owners in fee of the one-half of said abandoned easement.) Thereafter, in 1904, Mrs. Hay conveyed what is now known as Lot 31 of the Michigan Tract to one Bohrer, one of respondents' predecessors in interest. Although the area thus conveyed was described by metes and bounds which went along the southerly line of the right-of-way, there was the further description that "said portion [was] to be hereinafter known as Lot 31 Michigan Tract." (While surveyed in May of 1904, the plat of the Michigan Tract was not actually recorded until October of 1905.) The remaining lot in suit, Lot 30, was acquired by respondents as successors in interest of one Louise Hatch to whom it was conveyed by Mrs. Hay in August of 1905. The deed to Hatch likewise described the property by metes and bounds which, unlike the situation with respect to Lot 31, went to a point 10 feet southerly of the right-of-way. Two months later, when the plat of the Michigan Tract was recorded, the 10-foot alley between the northerly line described in the Hatch deed and the southerly boundary of the right-of-way became Marshfield Way.

Among other stipulations entered into, it was stipulated that in 1961 Pacific Electric quitclaimed to appellant Everett, for a stated consideration, all of its interest in the disputed area; a similar quitclaim deed was given by the railway company to appellants Thomson and Hansel in 1963. Each of the above conveyances, according to appellants, is a further bar to the relief awarded respondents. Say appellants: Even though (they contend otherwise) they acquired no reversionary interest in the subject property under the deed from Mrs. Hay to See, Pacific Electric thereafter obtained such rights by adverse possession and subsequently conveyed them to appellants.

First, appellants challenge the finding that respondents acquired the underlying fee in the property awarded to them by virtue of the two deeds to their predecessors in interest. With respect to Lot 30, they argue that the subject property, when deeded by Mrs. Hay to the first grantee, did not abut upon the railroad right-of-way but upon a space intended for later use as an alley (Marshfield Way). According to appellants, the effect of the challenged finding is a "leap-frogging" across Marshfield Way, thus making inoperative the presumptions declared by the statutes set forth below.[2] Cited and

---

[2]Section 831, Civil Code: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."

relied on is the holding of this court in *Wagner* v. *Chambers,* 232 Cal.App.2d 14 [42 Cal.Rptr. 334], where, if we had adopted appellants' argument, there would have been a similar but much more extensive "leap-frogging." With respect to Lot 31, there is no such problem since the property thus conveyed abutted directly upon the southerly line of the right-of-way, to-wit, by metes and bounds description "along the said southerly line of the right of way to a point . . . ." But appellants point out that under a similar description in *Severy* v. *Central Pac. R. R. Co.,* 51 Cal. 194, "the parties to the instrument intended that the lots should run up to the eastern line and not to the middle of the street." (P. 197.) It is therefore contended that since the description of the disputed property is assertedly precise and unequivocal, and since the only evidence of the grantor's intention is to be found in the deeds themselves, the trial court's determination of respondents' interests should not be upheld. For reasons now to be stated, these contentions cannot be sustained.

■ While the intention of the parties to a grant is properly gathered, if possible, from the instrument itself, the above principle obtains only where there is nothing ambiguous or uncertain in the descriptive terms thereof. ■ In the present case, the description of Lot 31 by metes and bounds clearly conflicts with its description by lot number. In such circumstances, "In determining the intent of the parties, consideration may be given not only to actual uses being made at the time of the grant, but also to such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance." *Neff* v. *Ernst,* 48 Cal.2d 628, 635-636 [311 P.2d 849].) The Hay-Bohrer deed (relating to Lot 31) conveyed the entire area within what later became the 10-foot alley (Marshfield Way). ■ If, as subsequently will be shown, Mrs. Hay had previously conveyed all her property northerly of the right-of-way, including the northerly one-half of underlying fee thereto, it would be

Section 1112, Civil Code: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

Section 2077, subdivision 4, Code of Civil Procedure: "The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful and there are no other sufficient circumstances to determine it: . . . 4. When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or thread of the stream is held under another title."

wholly illogical to presume that she intended to retain a narrow sliver, only 17½ feet in width, completely isolated and accessible only by an alley some 10 feet wide to which she did not own title. In *Los Angeles etc. School Dist.* v. *Swensen,* 226 Cal.App.2d 574, 579 [38 Cal.Rptr. 214], the court stated that a grantor's intent to withhold his interest in an alley (the same as in a street) will never be presumed, reasoning that there would be no object in the retention by the grantor of a narrow strip of land, which, when separated from the adjoining land, would be of little or no use to him. The court also observed that the value of the land to a purchaser would be greatly affected if the abutting street were not included in the conveyance. To the same general effect is *Merchant* v. *Grant,* 26 Cal. App. 485 [147 P. 484].

The above observations in *Swensen* likewise apply to the finding as to Lot 30, being another circumstance "within the reasonable contemplation of the parties at the time of the conveyance." (*Neff* v. *Ernst, supra.*) The evidence showed that the conveyances of Lots 29 and 31, each adjoining Lot 30, went to a point on the southerly side of the right-of-way. Appellants' position, if sustained, would result in the retention by Mrs. Hay of a 10 by 62 foot sliver from Lot 30. As stated in the *Swensen* case, such retention would be of little or no use to her; too, as declared in *Merchant,* "All the circumstances and facts are opposed to any such presumption." (P. 490 [of 26 Cal.App.].)

We likewise relied on *Merchant* in reaching our decision in *Wagner* v. *Chambers, supra,* 22 Cal.App.2d 14. As stated earlier, appellants rely on the latter case, but it is distinguishable. None of the area involved was left land-locked by the determinations there reached—it would be otherwise if there is any tenability to appellants' position at bar. Too, in *Wagner* we held that the ultimate question was the intention of the parties; and since the trial court found that it was not the intention of the original grantor to convey the fee underlying Vermont Avenue (westerly) and the railroad right-of-way, we affirmed on the basis that substantial evidence supported such finding. Here, of course, we have the converse situation, namely, a finding that the circumstances impelled just the opposite conclusion.

While respondents have assigned other theories in support of the present finding, they need not be discussed. Mention must be made, however, of appellants' claim that the use of a metes and bounds description in a deed conclusively forecloses

a determination that the grantor intended to convey the underlying fee to the street. The decisions do not go quite that far. See *City of Redlands* v. *Nickerson*, 188 Cal.App.2d 118 [10 Cal.Rptr. 431]. ■ As stated in that case, ". . . the use of such a description is a fact which may be considered in determining the intention of the parties [citation]; may support an inference that their intention was to limit the conveyance to the property actually conveyed [citations]; and has been recognized as one of the ways in which the presumption in question may be rebutted. [Citations.]" (P. 126.) ■ As further pointed out in *Nickerson*, if there is any evidence, direct or indirect, which supports the finding once it has been made, it must be sustained on appeal. (P. 126.) As to the present finding, we are governed, of course, by the above rule since there is substantial evidence justifying such determination.

■ As their next assignment of error, appellants argue that the trial court incorrectly limited their interest in the right-of-way to the northerly one-half thereof. They call attention to the wording of the Hay-See deed which conveys "all that portion . . . lying northerly of the Los Angeles Pacific Railway Company's right of way . . . ," and further point out that in the subsequent deeds to areas south of the right-of-way she refrained from including any portion of the area in dispute; under such circumstances, it assertedly follows, the Hay-See conveyance extended to the southerly line of the property in litigation. However, this argument overlooks the fact that in 1902, when the Hay-See transaction took place, the former's property was bisected by the right-of-way; too, at that time she also owned all of the land lying immediately to the south (and therefore directly abutting thereon). There would be merit to appellants' position if the right-of-way had then represented the outer boundary of Mrs. Hay's entire holdings, since the "marginal street" doctrine would then apply.[3] Instead, because of the bisecting street (or right-of-way, in this case), the exception to the above doctrine applies: "Obviously the rule does not apply where the grantor's property is bisected by a street." (*City of Redlands* v. *Nickerson*, 188 Cal.App.2d 118, 128 [10 Cal.Rptr 431].) Accordingly, the trial court properly concluded that when Mrs. Hay divested herself of the property described in the

[3]The "marginal street" doctrine has been thus stated: "The grant of land adjoining a street or highway which has been wholly made from, and upon the margin of, the grantor's land is deemed to comprehend the fee in the whole of the street." (11 C.J.S. 586.)

Hay-See deed, she intended to reserve to herself, for the benefit of her southerly land and its prospective purchasers, the same reversionary benefits she conveyed to the northerly grantees, the appellants in this proceeding.

Appellants further contend, in the alternative, that at the very least, they acquired a reversionary interest in the subject property by reason of the quitclaim deeds purchased by them from Pacific Electric; according to appellants, the latter company had acquired such interest by adverse possession as to all parties here involved. A very considerable portion of appellants' brief is devoted to this point, which includes a lengthy summary of the evidence bearing thereon. ■ Since much of the evidentiary matter is in conflict, we must accept as true those portions as favor the respondents (*Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]); and by the same token we must also discard the unfavorable portions as not having sufficient weight to be accepted by the trier of fact.

■ It should be noted, preliminarily, that Pacific Electric entered upon the property under a license resulting from the eminent domain proceeding. This license is presumed to have continued until its repudiation. Until so repudiated and until that fact has been brought to the knowledge of the licensor, the statute of limitations does not begin to run. (*Brandon* v. *Umpqua Lumber etc. Co.*, 26 Cal.App. 96, 98 [146 P. 46].)

■ The claimed repudiation at bar consists of the company's assertion of fee ownership for the statutory period (five years); but there is evidence which negates such claim. While Pacific Electric in 1956 entered into a written lease of the property with appellant Thomson, it was never recorded; too, it was for "beautification" purposes and specifically provided that the company "does not warrant title to property to be leased." There was no evidence that the property was ever fenced or improved with structures—on many occasions it was possible for people to enter the property and park their cars (which they proceeded to do). While appellant Thomson testified that he cleaned up and leveled the area claimed by him, there was testimony that respondents were engaged in much the same activities and they continued to do so until served with a restraining order. True, there was evidence which would support a contrary finding; for example, it seems that a neighboring restaurant (the Fog Cutters) made use of the property for parking purposes under an arrangement with appellant Thomson, and respondents in nowise protested. But the adverse character of this and other uses pointed out by

appellants was a question of fact for the trial court (*Brown* v. *Berman*, 203 Cal.App.2d 327, 329 [21 Cal.Rptr. 401]) just as it was in *Posey* v. *Bay Point Realty Co.*, 214 Cal. 708 [7 P.2d 1020], reled on by appellants where the court determined that there was sufficient evidence to warrant an affirmance of the judgment appealed from. We cannot adopt appellants' argument in the face of the conflicting evidence, and the inferences reasonably deducible therefrom, disclosed by the present record.

What we have just observed as to adverse user or possession applies with equal force to appellants' further claim that the trial court should have found that respondents were guilty of laches. ▮▮▮ Reiterated rather recently is the rule governing here that "Whether there has been delay amounting to laches in a particular case is a question of fact for the trial court." (*DaSilva* v. *Reeves*, 215 Cal.App.2d 172, 175 [30 Cal. Rptr. 81].) That such question was given careful consideration in the present proceeding is apparent from the following statement in the memorandum opinion: "I recognize that there is a degree of hardship, and possibly of inequity, in this result, for the reason that the Bosches took no action to assert their reversionary rights during the years following the abandonment of the right-of-way, until the filing of the instant suit. [Footnote omitted.] However, the Bosches did nothing to encourage the northerly abutters or anyone else to believe that they would never assert their reversionary rights. I have no reason to believe that the Bosches knowingly stood by while the northerly abutters were buying the non-existent rights of the Pacific Electric."

Perhaps a finding to the above effect should have been made, but the court did not do so—and for the following reason. Upon rendition of the court's decision, appellants filed a document captioned "Objections to Findings of Fact, Request for Special Findings and Counter Findings." It requested, among other things, that the court find respondents guilty of laches. Thereafter supplemental points and authorities were filed, pertinent to which the court filed a supplemental memorandum opinion expressing his concern with the question of laches but stating (to avoid further delay) that he was signing the findings, conclusions of law and judgment theretofore submitted. The court also suggested that he be given an opportunity to review the question on a motion for a new trial. Such motion was thereafter filed but subsequently abandoned—contemporaneously with the filing of appellants' notice of

appeal. Appellants attempt to justify such abandonment upon the ground that the court had also indicated by a certain letter to counsel that it was not going to adjudicate other matters (as suggested by appellants) connected with the action; an appeal was thus made necessary. However, a reading of the letter does not support appellants' seeming claim that the court had made a final and conclusive determination as to laches, to-wit, the nonnecessity of any finding in that regard.

Since the court had the power on motion for a new trial to change its findings (*Lala* v. *Maiorana*, 166 Cal.App.2d 724 [333 P.2d 862]), we believe that appellants' conduct above set forth, now forecloses them from objecting to the failure to find on the question of laches. Somewhat analogous is the fact situation in *Vogelsang* v. *Wolpert*, 227 Cal.App.2d 102 [38 Cal.Rptr. 440], where the appellant likewise abandoned a motion for new trial after entry of judgment. As here, appellants claimed to be aggrieved by the findings as filed. Said the court: ''In our system the trial court is afforded a final opportunity to adjust the form and contents of the findings through a ruling upon motion for a new trial (Code Civ. Proc., § 662). Appellants initiated that procedure, but for some good reason known only to themselves, they abandoned the remedy after full argument. As a consequence, the orderly conduct of the litigation with respect to the findings was interfered with by the appellants and they should not be allowed now to pick minor flaws and contend that there should be a reversal based upon them. Good faith should presuppose a continued repair in the trial court to the provisons afforded by law for the amelioration of minor mistakes.'' (P. 129 [of 227 Cal.App.2d].)

The situation is otherwise, however, with respect to certain other asserted errors which were also directed to the court's attention in appellants' request for specific findings. These errors are not minor in nature and directly infect the judgment appealed from. First, the judgment erroneously awards a portion of the area claimed by appellants Thomson and Hansel to appellant Everett, such area involving the northerly one-half of the right-of-way—admittedly the lines as drawn by the court did not conform with the issues raised in the pleadings and the pretrial order. Second, appellants specifically requested the court to make a finding as to the balance of the property embraced by the pleadings and within the southerly one-half of the right-of-way which was not awarded

to respondents. As to the latter contention, appellants presumably had in mind the position of Mrs. Hay, the defaulting defendant, in this litigation; respondents' counsel, according to the record, apparently was similarly minded and at one stage of the proceedings advised counsel for appellants that he had no objection to the special finding requested: "Since there can be but one Judgment in an action, we don't feel that this phase of the litigation should be left suspended in mid-air." There is no reason why the title to the subject property should be clouded any further, and we direct that the trial court amend its findings, conclusions of law and judgment to conform with the requests specifically set forth by appellants in their objections to the findings and their requests for specific findings as to this phase of the case only.

The judgment is reversed with directions to amend its findings, conclusions of law and judgment to conform with the views herein expressed. Both sides will bear their own costs on appeal.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 17, 1966.