[Civ. No. 29310.   Second Dist., Div. Five.   Dec. 1, 1967.]

L. C. FAUS, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

Demetriou & Del Guercio and Richard A. Del Guercio for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, Irvin C. Taplin, Jr., and John J. Collins, Deputy County Counsel, for Defendant and Respondent.

STEPHENS, J.—This is an appeal by plaintiff from an adverse judgment in the superior court in an action to quiet title to certain real property, or, in the alternative, for a money judgment for damages based on the theory of inverse condemnation.

The real property involved is a 25-foot-wide strip of land, 12½ feet on either side of the center line of Sunset Boulevard in the unincorporated territory of the defendant, Los Angeles County, bounded on the west by the center line of La Cienega Boulevard, and on the east, by the center line of Sweetzer Avenue.

It was stipulated by the parties that the legal issues and the interests of the parties be tried first. The court determined that plaintiff had no right, title or interest in the property, and appeal followed. Since the purpose of the action is to determine the right, title and interest of various parties in certain property, it is necessary to consider the terms of the deeds or other grants.

Early in the year 1906, Merchants Trust Company (hereinafter Merchants) sought to, and did, acquire fee title to certain land in the unincorporated portion of Los Angeles County for the purpose of developing a subdivision. They called the area to be developed, extending west of Hollywood, "Hacienda Park." A portion of this subdivision was desig-

nated "Sunset Boulevard" and extended from Sweetzer on the east, to Newcomb (now La Cienega Boulevard) on the west. Today, the area by name "Hacienda Park" is recognized only by the natives, while its denomination as the "Sunset Strip" is at least nationally famous. The portion of the "Sunset Strip" here involved is a 25-foot-wide strip extending some 2,000 feet down the center of Sunset Boulevard.

Merchants, in acquiring the property encompassing the subdivision, obtained portions thereof from several persons. Those deeding portions of the property with which we are concerned were the Rushes, the Moores, and one Newcomb. While the dates of recording of the deeds from each of these grantors varied by several months, the conveyances all predated June 9, 1906. Though the language of conveyance in the Rush and Moore deeds differs slightly one from another, and, except as below noted, the Newcomb grant is substantially the same, each conveys a fee and without right of reverter for any reason. The Moore conveyance encompassed the largest part of the subdivision area, and the Newcomb grant was the smallest. The Newcomb grant was of property generally in the form of a triangle, with a base on the north of 271.85 feet, a depth on the west of 82.10, and on the east, of 9.51 feet, with the hypotenuse being 281.41 feet. Each of the three mentioned is a grant in fee simple absolute. The Newcomb deed, however, bears the following statement: "The above described strip of land to be used for road purposes only, the party of the first part to have right of way at all times over said road." The statement does not affect the fee granted.[1] As can be computed, the full width of Sunset Boulevard, including the 25-foot area in which tracks were to run and the $27\frac{1}{2}$ feet on each side thereof, is 80 feet, and the key depth of the Newcomb grant is 82.10 feet.

The plaintiff in the instant action, L. C. Faus, by various probate proceedings and quitclaim deeds, succeeded to whatever interests, if any, the Rushes, Moores and Newcomb retained.

The trial court, in its finding of fact VI, found that "[s]ubsequent to the conveyances referred to in Paragraphs [find-

---

[1] In *Cooper* v. *Selig*, 48 Cal.App. 228 [191 P. 983], an absolute grant similar to the one by Newcomb was followed by a later clause reciting that the land was "for the purposes of a public road." The court followed the rule of interpreting a grant in favor of the grantee, and held that a fee was conveyed. (See also *Basin Oil Co.* v. *City of Inglewood*, 125 Cal.App.2d 661 [271 P.2d 73].)

ings] III, IV, and V, neither Alfred H. Rush, Annie R. Rush, Georgia D. Newcomb, Thomas J. Moore, nor Helen Moore have retained or acquired any right, title or interest in the real property which is the subject of this action," thus holding that each of the three deeds heretofore referred to conveyed a fee interest.

By virtue of a deed dated June 5, 1906, Merchants conveyed a certain interest in real property to Los Angeles Pacific Company (sometimes hereinafter Pacific), as follows:

"Witnesseth: that the party of the first part, for and in consideration of the sum of Five (5.00) Dollars, lawful money of the United States of America, to it in hand paid by said party of the second part, the receipt whereof is hereby acknowledged and for other good and valuable considerations moving from the said party of the second part to the said party of the first part, does hereby grant, bargain and convey unto the said party of the second part and to its successors and assigns forever, as a right of way for a single or double track railway, the cars thereon to be operated by electricity, or any other motive power authorized by law for the operation of railways, that certain piece or parcel of land situate, lying and being in the County of Los Angeles, State of California, particularly described as follows, to-wit: . . . [Thereafter follows a legal description of the property involved, being 25 feet in width and 2,000 feet in length; being 12½ feet on each side of the center line of the presently designated Sunset Boulevard] as more particularly described on the accompanying map, to which reference is hereby made.

"With the right to enter upon said strip of land above described, and construct, maintain and operate cars thereover together with the right to erect and maintain poles on the land of the party of the first part adjoining and on both sides of the strip or piece of land above described, such poles to be used for the purpose of carrying wires for the transmission of electrical power, trolly [sic] wires and all other things or appliances that may be necessary to transmit power or for any purpose necessary for the operation of cars over any railway that may be constructed on said strip of land; such poles to be erected at such distances from each side of the center line of the right of way hereinbefore granted, that when the party of the first part shall dedicate land adjoining said strip of land for street or highway purposes such poles shall be adjoining and inside the curb line established for any such street so dedicated.

"This conveyance is made with the understanding that said party of the first part will dedicate for the purposes of a boulevard Twenty seven and one half (27.5) feet on both sides of said strip of land herein conveyed for railroad purposes, and in such event said party of the second part shall construct its tracks and roadbed upon the grade hereafter to be established by the County Surveyor of the County of Los Angeles for said boulevard, and thereafter maintained by said party of the second part, its successors and assigns, in good order and repair, so that the surface finishing of said railroad and tracks shall conform to the fixed grade of said boulevard.

"To Have and to Hold all and singular the said estate, rights and privileges unto the said party of the second part, its successors and assigns forever."[2]

Thereafter, and on June 9, 1906, the Los Angeles Pacific Company indorsed a dedication upon the subdivision map subsequently to be filed by Merchants, this indorsement reading as follows:

"The Los Angeles Pacific Company, a corporation, hereby certifies that it is the owner of the strip of land Twenty five feet in width, shown on this map in the center of the proposed Sunset Boulevard, with Green colored border lines, and Said Company hereby dedicates said strip of land for public use as a street but this dedication is subject to the prior right, which is hereby reserved to Said Company, its successors and assigns, to construct, operate and maintain a single or double track railroad along said strip of land." Also appearing on this subdivision map filed by Merchants with the County for approval is the indorsement signed by Thomas J. Moore and Helen Moore. It reads as follows:

"We hereby certify that we are the Owners of lot 15 in block I Hacienda Park, and the Forty (40) feet adjoining on the North, being the 2 acres Excepted in deed from us to the Merchants Trust Co., which deed is recorded in Book 2560 of Deeds, at page #235, and further that we caused such Subdivision and Map to be made and dedicated for public use the streets as shown on this map within the colored border line." In addition to the other indorsements upon the subdivision map as filed was the certification by Merchants: "We hereby certify that we are the proprietors of the property subdivided as shown by this map, and further that [four typewriter spaces] caused such subdivision and map to be made and

---

[2]It is a fact that at no time were railroad tracks or other railroad improvements ever constructed.

dedicate for public use the streets and alleys shown on this map within the colored border lines." [Sunset Boulevard was depicted on the map and within the colored border lines.]

Thereafter, and on the 25th day of June, 1906, the map heretofore referred to was, by resolution, approved as follows by the board of supervisors:

"In re—acceptance of Streets and Alleys Etc., in Hacienda Park

"            Upon motion of Supervisor Brady duly seconded and carried by the following vote to wit: Ayes Supervisors Brady, Alexander, Wilson and Patterson, Noes Supervisor Graham it is ordered that all streets, lanes, alleys, roads and other portions of the land shown upon said map (Surveyed Apr. 1906) and thereon offered for dedication be and the same are hereby accepted as Public Highways. The clerk of this Board is directed to indorse upon the face of said map a copy of this order authenticated by the Secretary of the Board of Supervisors.

"I hereby certify that the foregoing resolution was passed by the Board of Supervisors at a regular meeting held on the 25th day of June, 1906.

"Attest:

C. G. Keyes, County Clerk, and Ex-Officio Clerk of the Board of Supervisors

"By /s/ A. M. McPherson
            Deputy"

In addition to the indorsement by the Los Angeles Pacific Company heretofore referred to certifying that "it is the owner of the strip of land Twenty five feet in width, shown on this map in the center of the proposed Sunset Boulevard," it should be noted that on the map itself, in broad print covering approximately one-half of the width of the said Sunset Boulevard as shown, centered in the total 80-foot area of Sunset Boulevard, is the inscription, "Sunset Blvd." ■ The public is entitled to use all the territory plotted and dedicated as a public street. (*Merritt* v. *McFarland*, 4 Cal.App. 390 [88 P. 369].)

By a default judgment of quiet title, Faus obtained judgment against Merchants. This completes what he claims to be an unbroken chain of title. Assuming Faus obtained whatever interest Merchants may have had by virtue of the judgment of

quiet title, the issue is posed: Did Merchants own any real property interest which passed by the judgment quieting title? To answer this question, we must determine whether Merchants dedicated the land in question for public street purposes (either alone or in conjunction with Pacific).

■ To establish dedication of land for public use, there must be an unequivocal and clear manifestation of intent to dedicate. (*Manhattan Beach* v. *Cortelyou,* 10 Cal.2d 653 [76 P.2d 483] ; *Niles* v. *City of Los Angeles,* 125 Cal. 572 [58 P. 190] ; *Harding* v. *Jasper,* 14 Cal. 642.) ■ Clearly, if Los Angeles Pacific held title in fee to the Pacific strip property, and the claim of ownership is correct as shown on the filed map, then the dedication sought to be accomplished by virtue of Pacific's indorsement for dedication would have been accepted by the board of supervisors. If that not be the case and, assuming that the title as given to Pacific was other than a grant in fee with limitations, or for specific purposes of use, then, by filing the statement executed by Pacific and heretofore referred to, Merchants certainly indorsed that portion of the Pacific statement that "said Company hereby dedicates said strip of land for public use as a street but this dedication is subject to the prior right, which is hereby reserved to said Company." Merchants, being the holder of the fee, as it claimed to be, and was, of all of the remaining portion contained in the plat map, subject to any easements, actually dedicated the whole of the 80 feet of Sunset Boulevard by adoption and ratification of the language of dedication executed by Pacific and submitted as a part of the total tract subdivision map by Merchants.[3] This was relied upon and acted upon in full by the board of supervisors in accepting the dedications thereon shown, indicated and executed, however they might be designated and represented.

Within the language of the resolution by the board of supervisors, it is stated: "it is ordered that all streets, lanes, alleys, roads and other portions of the land shown upon said map . . . and thereon offered for dedication . . . are hereby accepted . . ." We observe no other meaning to "other portions of the land" than that it has reference to that portion dealing with the strip over and in which Pacific had a right to

[3]This dedication of the 80-foot width of Sunset Boulevard for street purposes was in complete compliance with the Newcomb deed statement of purpose. Merchants, by its action in filing for approval the tract map, reserved to itself no interest in the strip adverse to the purpose expressly set forth in the Newcomb conveyance.

install certain railway tracks and other appurtenances.[4]
A railroad corporation may dedicate the rights to
occupy and use as a public highway land conveyed to it for
railroad purposes. (*Southern Pac. Co.* v. *City of Pomona,* 144
Cal. 339, 341-342 [77 P. 929].) The language as to intent of
the dedicatory principles in the *Southern Pacific* case seems to
us persuasive in the instant case. The court there stated (p.
350) : "The evidence is that the city authorities, as well as the
general public, believed that the S.P. Co. had full authority to
dedicate Gordon Street, and there is evidence, from which a
reasonable inference may be drawn, that the S.P.R.R. Co.
engendered this belief intentionally as well as by want of
ordinary care. Whether Mr. Muir was acting in this particu-
lar instance as division superintendent of the S.P. Co., or was
acting for the S.P.R.R. Co., or both, does not appear, but that
he was with good reason believed by defendants to be acting
under competent authority and held himself out as so acting,
does appear. No other conclusion is consistent with the con-
duct of the parties interested. The dedicatory acts to which
we have alluded were such as would apparently be within the
power of the S.P. Co. to perform in the conduct of the busi-
ness contemplated by the lease. The S.P.R.R. Co. permitted
the S.P. Co. to appear to possess authority, as it had itself, to
dedicate Gordon Street and is bound by its agent's acts as
within its ostensible authority."

It is unnecessary for us to determine whether Pacific
obtained an easement or some other interest from Merchants.
Certainly the construction that an easement only was con-
veyed was not the intent according to the certifications made

---

[4]Stats. 1893, ch. LXXX, p. 96, as amended by Stats. 1901, ch. CXXIV,
p. 288, in effect on June 25, 1906, provided in part:
"An act requiring the recording of maps of cities, towns, additions
to cities or towns, or subdivisions of lands into small lots or tracts for the
purposes of sale, [etc.], . . .
"Sec. 1. Whenever any city, town or subdivision of land into lots, or
any addition to any ctiy, town or such subdivision shall be laid out into
lots for the purpose of sale, the proprietor or proprietors thereof shall
cause to be made out an accurate map or plat thereof, particularly setting
forth and describing:
"First—All parcels of ground within such city, town, addition, or sub-
division, reserved for public purposes, by their boundaries, courses and
extent, whether they be intended for avenues, streets, lanes, alleys, courts,
commons, or other public uses; and
"Second—All lots intended for sale, either by number or letter, and
their precise length and width.
"Sec. 2. Such map or plat shall be acknowledged by the proprietor,
or if an incorporated company, by the chief officer thereof, before some

on the map heretofore referred to and relied upon by the board of supervisors. Nor did that appear to be the intent and belief of Pacific as of March 15, 1912, when it executed a deed to the County of Los Angeles, as follows:

"That the said party of the first part hereby grants to the said party of the second part, an easement for highway purposes, over that certain piece or parcel of property more particularly described as follows, to wit: [Description of the 25 feet by 2,000 feet strip] . . . and lying in the center of Sunset Boulevard marked 'L. A. & Pac. Rt. of Way', as shown on Map of said Hacienda Park. The above strip of land being more particularly shown by the colored portion of the plat hereto attached and hereby made a part hereof. [¶] Subject, however, to the following condition subsequent: Should the party of the second part at any time abandon the use of the said premises as a highway, or should the same not be used as a highway for One (1) year, the easement hereby granted shall cease and determine and the said party of the first part shall thereupon have the right to retake and assume absolute possession of said premises."

The trial court, in finding VII, found as a fact that Pacific disclaimed any interest, of any kind whatsoever, in this strip. This disclaimer, executed December 5, 1962, is of moment particularly when we seek to ascertain what interest Pacific believed and represented it had in the strip, whether it be fee or easement. However, as we have heretofore pointed out, whether Pacific had been granted a fee or only an easement does not affect the dedication to the county at the time of the acceptance of the subdivision map. The granting of the further easement in 1912 merely completed the exclusive right of use for street purposes of the area theretofore subject to railway track installation.

In the case before us, declarations by Pacific of ownership of the land and certification of accuracy of the tract map by Merchants have heretofore been discussed. There is an initial and obvious difference between such declarations and the deed

---

officer authorized by law to take the acknowledgement of conveyances of real estate.

"Sec. 3. The map or plat so made, acknowledged, and certified shall be presented to the governing body having control of the streets, roads, alleys, and highways in the territory shown on the map or plat, and said governing body shall indorse thereon which streets, roads, alleys, and highways, offered by said map or plat, they accept on behalf of the public and thereupon such streets, roads, alleys, and highways, only as have been thus accepted, shall be and become dedicated to public use. When so indorsed, and not before, said map or plat shall be recorded . . ."

to the Los Angeles Railway Company in *Wagner* v. *Chambers,* 232 Cal.App.2d 14 [42 Cal.Rptr. 334], for the deed contained a reverter clause upon abandonment by grantee. None such is contained in the deed from Merchants to Pacific. The basic and inescapable distinction, however, lies in the fact that the right of way was not even within the subdivision involved in the *Wagner* case (see pp. 17-19). In our case, Sunset Boulevard was the heart of the subdivision. The language quoted in the *Wagner* case (p. 20) is most apropos to the case at hand: ''Also quoted is the following from *Merchant* v. *Grant,* 26 Cal.App. 485, 490 [147 P. 484]: 'It would seem to us to be unreasonable to hold that the grantors of Van Alen intended to retain in themselves the ownership of the land included in the highway which could have been of no possible use to them and might result to the serious injury of their grantee. All the circumstances and facts are opposed to any such presumption.' . . . . As declared in *Anderson* [*Anderson* v. *Citizens Sav. etc. Co.,* 185 Cal. 386, 394 [197 P. 113]], the '[f]inal question after all is one as to the intention of the parties . . .' ''

In view of the above analysis, it is unnecessary to now determine whether in fact, by reanalysis, the deed to Pacific from Merchants was in fact a deed of a fee for a specific purpose, or whether it was but a deed of an easement, except that plaintiff in this action claims that by virtue of a subsequent act of the county and Pacific, the county has acted inconsistently with its present position of claiming a dedication by the subdivider. This, of course, belies the fact that according to the tract map, Pacific claimed ownership of the property involved. Because the County of Los Angeles accepted a grant deed as it did on March 15, 1912, for an easement for highway purposes over that certain piece of property called ''the strip,'' it cannot be said that the county acted in an inconsistent manner.

Pacific continued with its consistent certification of its ownership by deed from Merchants by its statements within its grant to the county in 1912, as heretofore set forth.

The case of *Manhattan Beach* v. *Cortelyou, supra,* 10 Cal.2d 653 is not in point, for there the subsequent acts of the city did in fact constitute a recognition of the right of respondents and their predecessors. This is not at all true in the case before us, for here, Pacific gave up its right of use for railway purposes over the strip theretofore dedicated, but reserved to itself by reversion its interest in the property, with right

to retake and assume absolute possession thereof upon the abandonment by the county of the purposes for which the easement of 1912 was granted. Certainly it is not inconceivable that the county disliked preparing an improvement over the full area of 80 feet of Sunset Boulevard when it was thereafter possible for Pacific to implant its tracks through the center thereof in accordance with the tract map theretofore filed and effectively destroy the county improvement. The easement rights obtained in 1912 foreclosed this possibility and were entirely consistent with the position of dedication theretofore taken, subject to the right of Pacific to enter and install its tracks. The dedication, subject to occupancy by tracks, over the whole of the street of Sunset Boulevard, 80 feet in width and 2,000 feet in length, was occasioned at the time of the approval of the tract map on June 25, 1906. The 1912 grant was an "easement" over the area, no longer subject to occupancy by tracks, and not a dedication. It is unnecessary to consider the contention that a dedication took place in 1912, since we find it was occasioned in 1906.

We do not consider the argument of the county of a paramount title by adverse possession. We do note. however, that much strength is given to this contention by the expressions in *Faus* v. *City of Los Angeles* (Sept. 1967) 67 Cal.2d 350 at p. 361 [62 Cal.Rptr. 193, 431 P.2d 849], which was decided after the trial court in the instant case had made its determination adverse to the county's contention on this issue.

The judgment is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.