[Civ. No. 23388. First Dist., Div. Three. Aug. 25, 1967.]

JOHN P. HIXSON et al., Plaintiffs and Appellants, v. EUGENE JONES et al., Defendants and Respondents.

Broun, Norris, King, Graaskamp & Lancefield, George W. Graaskamp and LeRoy A. Broun for Plaintiffs and Appellants.

Ronald J. Motta for Defendants and Respondents.

BROWN (H. C.), J.—Appellants filed a quiet title action to a strip of real property naming as defendants the City of Fremont, California; the County of Alameda, L. T. Whipple and respondents Jones. The City of Fremont filed a disclaimer to the disputed property. The County of Alameda and L. T. Whipple (who answered the complaint), having no interest in the real property, did not appear at the trial to contest either Hixons' or Jones' claims to the property. Respondents Jones filed an answer and cross-complaint also praying to quiet title in their names.

The trial court quieted title in favor of respondents.

This action was brought by appellants to determine the ownership of a strip of real property 25 feet wide and 110 feet long, adjacent to a parcel of property owned by appellants, which is 52.5 feet wide by 110 feet long. The question is whether or not the deed to this parcel of property from appellant's grantor, Laura Thane Whipple, included a 25-foot strip of land which is one-half of what was designated as 3d Street, on a map filed in 1907, entitled "Bond Tract," which map was recorded in Alameda County, subdividing the area in question into lots and dedicating parts thereof to the public as streets. Among the streets shown on this map is 3d Street (later rejected as a street by the county), which is immediately adjacent to the parcel of property acquired by appellants from Laura Thane Whipple. This 1907 map further divided the land into lots 35 feet in width by 100 feet in depth.

Appellants testified that in 1954 they were interested in purchasing a corner lot from Mrs. Whipple. At this time the County of Alameda had a minimum lot size requirement of 50 feet by 100 feet. Mrs. Whipple's selling agent, E. C. Parks, added three 35-foot lots together (105 feet) shown in the subdivision map of 1907 and divided the total into two lots of 52.5 feet by 100 feet in order to comply with the county

minimum lot size requirement. Appellants desired a longer lot and 10 feet was added from a rear lot (lot 9 on 1907 map).

Parks told appellants prior to the signing of the deed that if 3d Street was ever abandoned it would undoubtedly become attached to their property and that, although they could not build anything stationery on the area known as 3d Street, he supposed they could raise vegetables or such things on it, and if the street was ever abandoned they would recover title to it.

Appellants believed that it was to be a street and had no interest in acquiring title to it. Parks requested the title company to make up the legal description based on the lots but neither he nor Mrs. Whipple specifically requested them to use a metes and bounds description. The title company thereupon drew a description of the real property situated in the City of Fremont, County of Alameda, using the following language: "Lot 8 and a portion of Lots 7 and 9 in Block 4, according to the map of 'Subdivision of the Bond Tract', filed August 22, 1907 in the office of the County Recorder of Alameda County, and of record in Map Book 23, page 26, bounded as follows: Beginning at the intersection of the northwestern line of County Road No. 1008, known as Driscol Road, with the southwestern line of 3rd Street, as shown on said map, and running thence along said line of Driscol Road southwesterly 52.50 feet; thence parallel with said line of 3rd Street northwesterly 110 feet; thence parallel with said line of Driscol Road northeasterly 52.50 feet to said line of 3rd Street; thence along the last mentioned line southeasterly 110 feet to the point of beginning."

Mrs. Whipple testified that at the time of the sale to appellants she believed that 3d Street was a street; that she did not intend to sell 3d Street but intended that it should remain a street; and that she had no intention of later reclaiming it for herself.

In the years that followed, appellants used and maintained the strip. On March 21, 1963, Mrs. Whipple granted the remaining property she owned in the area to the respondents Eugene P. and Ann T. Jones but did not convey the strip of land 25 feet wide by 110 feet long, the land in dispute. On November 6, 1963, appellants brought this action to obtain a court declaration that 3d Street had been abandoned and also to quiet title in and to the one-half of 3d Street adjacent to their property. Over three months after the action was filed, Mrs. Whipple quitclaimed to the respondents Jones any inter-

est she may then have owned in and to the 25-foot strip, because she thought it would do well as a driveway for access to the entire Jones property (there were other accesses to the property).

On June 10, 1965, the defendant City of Fremont filed a disclaimer, disclaiming any interest in the portion of 3d Street under dispute.

Under these facts it is our view that the trial court erred in its conclusion that respondents Jones owned the 25-foot strip of land.

█ "A transfer of land bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." (Civ. Code, § 1112.) In *Neff* v. *Ernst,* 48 Cal.2d 628, 635 [311 P.2d 849] the court states: "It is the general rule that it will be presumed that where property is sold by reference to a recorded map the grantee takes to the center of the street or streets shown on the map as bounding the property, even though the streets shown therein appear to have been vacated or abandoned or the deed itself refers to the streets as having been vacated or abandoned. The presumption continues to apply in the absence of a clear expression in the deed not to convey title to the center line. (*Anderson* v. *Citizens Sav. etc. Co.,* 185 Cal. 386 [197 P. 113] ; *Pinsky* v. *Sloat,* 130 Cal.App.2d 579 [279 P.2d 584].)"[1] In case of doubt, a deed must be interpreted in favor of the grantee. (Civ. Code, § 1069 ; *Neff* v. *Ernst, supra.*)

In the early case of *Anderson* v. *Citizens Sav. etc. Co.,* 185 Cal., at pages 386, 396 [197 P. 113], the court said: " 'The whole question is most exhaustively discussed by the learned American editors of Smith's Leading Cases (8th ed., vol. 2, p. 178) in the notes of *Dovaston* v. *Payne,* and the conclusion reached that the treatment of the highway as a monument furnishes the means to include the fee to the street center in every case where there is not express language excluding it. (See, also, 3 Kent's Com. 349.) The wisdom of such a con-

---

[1]See also section 831 of the Civil Code which reads as follows: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." Also section 2077, subd. 4, of the Code of Civil Procedure reads: "When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or thread of the stream is held under another title."

struction is manifest, and the great weight of authority sustains it.' ''

■ The description on the August 2, 1954 deed to appellants uses a lot description and in addition a metes and bounds description along ''the southwestern line of 3rd Street, . . .'' The use of a metes and bounds description which does not include one-half of an adjoining street is one of the ways to rebut the statutory presumption that the grantee takes the underlying fee to the center of the street.[2] (*Joens* v. *Baumbach*, 193 Cal. 567 [226 P. 400] ; *Machado* v. *Title Guar. & Trust Co.*, 15 Cal.2d 180 [99 P.2d 245] ; *Merchant* v. *Grant*, 26 Cal.App. 485, 489 [147 P. 484].) '' [T]he use of such a description is a fact which may be considered in determining the intention of the parties . . .'' (*City of Redlands* v. *Nickerson*, 188 Cal.App.2d 118, 126 [10 Cal.Rptr. 431].)

''While the intention of the parties to a grant is properly gathered, if possible, from the instrument itself, the above principle obtains only where there is nothing ambiguous or uncertain in the descriptive terms thereof. . . . the description of Lot 31 by metes and bounds clearly conflicts with its description by lot number.'' (*Everett* v. *Bosch*, 241 Cal.App. 2d 648, 653 [50 Cal.Rptr. 813].) ■ Where such an ambiguity appears on the face of the deed, parole evidence is admissible to determine the intention of the parties. (*Neff* v. *Ernst, supra,* p. 635 ; *City of Redlands* v. *Nickerson, supra,* p. 125 ; *Everett* v. *Bosch, supra,* p. 653.)

The extrinsic evidence in the case at bar shows that the metes and bounds description in the August 2, 1954 deed was not requested by the grantor (Mrs. Whipple or her selling agent, Mr. E. C. Parks) but instead was inserted by the title company which prepared the deed. Appellants logically argue that the metes and bounds description was added by the title company because the lot and block description was vague in that it referred to ''portion of Lots 7 and 9.'' The use of a metes and bounds description creates an inference which may rebut the statutory presumption that the parties intended to convey the underlying fee to the center of an abutting street *only* if the metes and bounds descriptions were inserted by the exercise of free choice by the grantor. (*Machado* v. *Title Guar. & Trust Co., supra,* 15 Cal.2d 180.)

[2]A minority of jurisdictions do not follow the California rule and instead recognize that a description running the boundary along the highway's inner side line is consistent with an intent to convey to the center line of the highway. (See 49 A.L.R.2d 982, 1023-1029.)

In *Machado* the court held that the metes and bounds description did not rebut the statutory presumptions that an adjoining owner owns the underlying fee to the center of the street where the metes and bounds descriptions were originally inserted by a referee in a partition proceeding as required by law (Code Civ. Proc., § 764) and were thereafter used by successive grantors. The court reasoned that the descriptions ''were wholly the result of the statutory mandate . . . and therefore were not intended, . . . to rebut the favored presumption that owners contiguous to a street or road own to the center thereof. Such descriptions may reasonably be said to have been employed to identify the parcels . . . transferred and not with the intention of excluding the abandoned street area.'' (*Id.* at p. 186.) The uncontradicted extrinsic evidence here then denotes that the metes and bounds description was not intended to exclude appellants' ownership of one-half of the adjoining street but was inserted by the title company on its own initiative to remove the uncertainty created by the partial lot descriptions. Therefore, the metes and bounds description does not evidence any intent of the parties which is pertinent to the issue involved.

It was stipulated that at the time of Mrs. Whipple's conveyance on March 21, 1963 to respondents of all her remaining real property in the area there was no intent to convey the disputed strip of 3d Street to respondents. It would appear to be wholly illogical to presume that Mrs. Whipple intended to retain a narrow sliver of property 25 feet by 110 feet. In *Brown* v. *Bachelder*, 214 Cal. 753, 756 [7 P.2d 1027], the court stated: ''The owner and dedicator of the street in the instant case contemplated that it should be reserved to public use. In the event of an abandonment or failure to accept a dedication, a strip of land the width of a street can be of little use to the dedicator who has parted with title to all lands on both sides of the street, as was done by the original dedicator in the instant case, and it will not in such circumstances be presumed that he intended to retain the fee as a remnant of his private estate.'' (See also *Merchant* v. *Grant, supra,* p. 490; *Anderson* v. *Citizens Sav. etc. Co., supra,* p. 386.)

The court in *Los Angeles etc. School Dist.* v. *Swensen,* 226 Cal.App.2d 574. 579-580 [38 Cal.Rptr. 214], in reviewing the reasoning of courts in other jurisdictions said: '' '[T]here is

no object in the grantor's retaining a narrow strip of land which is of little or no use or value to him when separated from the adjoining land [citation]; that the value of the land to a purchaser would be greatly affected if the abutting street were not included in the conveyance [citation]; that such a rule will guard against litigation and disputes between owners of land adjacent to public highways [citation]; that retention of such a narrow strip of land would retard the improvement and further alienation of the adjoining property [citation]; and that "if no other reason could be assigned of this rule . . . the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight." (*Paul* v. *Carver*, 26 Pa. 223, 225 [67 Am.Dec. 413]; 9 C.J. 197, note 75.)' (11 C.J.S., § 35, p. 581.)''

Accordingly, if Mrs. Whipple had intended retaining ownership in the strip, she could have made such a reservation in the deeds to appellants and respondents. This she failed to do and in the absence of such reservation or other evidence indicating that intent there is no reason to presume that she so intended. The construction placed upon the deed by the parties, as evidenced by their conduct in relation to the property involved, indicates their intention with respect to the extent of the conveyance. (See *City of Redlands* v. *Nickerson, supra,* p. 127.) The record here shows that in the years subsequent to the grant to appellants, appellants took care of the strip in question, parked cars, put in an engine-hauling device, and pruned and watered the trees on it. Thus, appellants argue that such past conduct and the statement by Mrs. Whipple's authorized selling agent that in his opinion if 3d Street was ever abandoned, one-half would go to the adjoining owners is evidence that the parties did not intend that the grantor should retain the underlying fee to 3d Street. ██ However, it is our conclusion that the testimony of the parties to the August 2, 1954 grant and their actions evidence only that they had no actual intent as to 3d Street other than it was dedicated as a street, therefore, the statutory presumptions are controlling. (Civ. Code, §§ 1112, 831; Code Civ. Proc.. § 2077. subd. 4.)

The judgment is reversed with instructions to the trial court that judgment be entered quieting title in appellants.

Draper, P. J., and Salsman, J., concurred.