JOHN FREDERICK MAY *vs.* WALTER H. SMITH.

LAW. No. 20,521.

{ Decided January 14, 1884.
{ The CHIEF JUSTICE and Justices HAGNER and Cox sitting.

1. One cannot have a right of way over his own land as something separate from the fee simple ownership; all such rights are considered merged in the ownership of the soil. Consequently where the owner of a lot which extended from the street in front to an alley in the rear, sells, "with the appurtenances thereto belonging," a portion of the lot, which portion fronts upon the street but does not quite extend to the alley, the term "appurtenances" does not carry with it a right of way to the alley over the part not sold. Such a right can only be conveyed by express grant.

2. The owner of an easement in land can abandon or extinguish it if he chooses, and if he does so, and afterwards sells the land, the easement is no longer incident to it.

3. Where a house is sold "with the lot attached," the question as to the extent and boundaries of the latter is one of fact for the jury.

THE CASE is stated in the opinion.

W. B. WEBB for plaintiff.

W. H. SMITH for defendant.

Mr. Justice Cox delivered the opinion of the court.

This is an action of trespass on the case, brought for an alleged obstruction of the plaintiff's right of way over land belonging to the defendant. The way is described in the declaration, as follows:

"An alley, or way of eleven feet seven and a half inches wide, leading from the alley heretofore laid out in said square [456] by the commissioners in the division of said square between the original proprietors and them, and thence to the north end of the above described moiety herein conveyed."

The declaration had previously averred that the plaintiff was seized of part of lot 7 in square 456, to which the claim is made that the right of way was an appurtenance. The verdict was rendered in favor of the plaintiff; but several exceptions were taken in the course of the trial by the defendant, and the case comes up here on a motion for a new trial, based upon those exceptions.

In order to make the case intelligible it is necessary to give some explanation of the *locus in quo.* Lot No. 7, in square 456, fronts on the north side of E street, and is the second lot in the square counting eastwardly from 7th street. It has a front of 59 feet 11½ inches. Of course 29 feet 11½ inches would be one-half the front of the lot. The plaintiff shows a conveyance from Alexander Kerr to John H. Oswald, dated May 17, 1800, conveying the west half of lot 7 in square 456, with appurtenances, and " the free use, privilege and convenience forever of an alley or way, 11 feet 7½ inches wide, leading from the public alley heretofore laid off by the commissioners in the division of the square between the original proprietors and them ; and thence to the north end of the above described moiety or piece and parcel of ground," intended to be conveyed. That is to say, the deed conveyed the west half of lot 7 in square 456, of the width of 29 feet 11½ inches, and running back 99 feet 8 inches, together with an alley or way of the width of 11 feet 7½ inches running east and west to the north end of this half lot from the public alley in the middle of the square. Of course this alley was taken out of the land of somebody else.

By sundry conveyances, this property, on the 15th of May, 1858, became vested in James J. Waring. Waring afterwards purchased part of the east half of the same lot, adjoining what he already owned, this last purchase having a front on E street of 14 feet 11¾ inches, and running back that width 88 feet 1½ inches, to the alley reserved for the west half of the lot. So that, by these sundry conveyances, Waring became entitled to the west half of the entire lot 7 and the alley way, 11 feet 7½ inches in width, running from the northeast corner to the middle of the square, and also an addititional strip contiguous thereto, and running back to that alley.

In December, 1860, Waring made a deed of trust to Wm. B. Webb and Robert S. Patterson, in order to secure a certain debt therein recited, conveying the whole of the property acquired by him as above mentioned. On the 21st of

July, 1862, Webb and Patterson sold a part of this property which they thought sufficient to pay the debt. They describe the part sold as the "brick house built on lot 7 in square 456, as the same is laid out and described on the ground plan of the city of Washington, and the lot attached to the same, together with all and singular the improvements, ways, rights, tenements and hereditaments and appurtenances unto the same belonging or in any way appertaining." This brick house had a width of 22 feet 5½ inches, so that that was sold from off the west half, leaving a strip of that west half, still in Waring, 7 feet 6 inches in width, in front.

The question is made, how far back the lot so sold extended. The house was sold, and the "lot attached to the same." It is in proof that from the east wall of the house there was extended, to a point 29 or 30 feet from the north line of said lot 7, a fence which was continued from that point westward across the lot so as to make a complete enclosure, that enclosure thus being 29 or 30 feet from the north end of the lot, at which end this alley begins. The pertinency of the question thus becomes obvious.

The plaintiff claims that a stable had been erected by Waring on the northeast corner of his premises in such a manner as to entirely cover the way named in the deed from Kerr to Oswald, and extending about 22 inches over the east line of the house extended. We assume for the present that the lot sold did extend to the rear of the entire lot 7. At that point there was a strip of land left at the west part of lot 7 not conveyed by the trustees, and the title to which still remained in Waring, 9 feet in width, between the lot sold by the trustees and the commencement of the alley which has already been described; and the main question is whether, under these circumstances, the purchaser under that deed took the right to cross that intervening strip for the purpose of communication with the public alley. It should here be stated that the purchaser under that deed of trust sale was J. F. Callan, who subsequently conveyed to

8

Dr. May, and after that Waring conveyed all the remaining part of lot 7 that he owned to the defendant.

The plaintiff claims that after this conveyance to Callan, he had the privilege for a short time of going from the north part of this lot through a stable door in the west end of the stable to the alley; but he complains that afterwards the defendant closed up that door and cut off all access to the alley.

The case then is presented, in the first instance, of a conveyance of part of a lot from one end of which an alley is laid out, and which part is separated from that alley by the intervening part remaining in the grantor, and the question is, whether that conveyance gives the grantee a right of way over the remaining part to the public alley.

To maintain that, the plaintiff says, in argument, that this alley was laid out for the benefit of the whole lot that was conveyed in 1800 by Kerr to Oswald. In other words, he must claim that the way extended within the lot conveyed in fee, and to every part of it, and back from every part to the public alley. . In terms, the alley is laid out *to*, not *into*, the north end of the lot which is conveyed in fee simple, and by the ordinary construction of language, the lot conveyed in fee simple is the terminus and limit and boundary of that way. In this case there was no right of way from the western part of this lot conveyed in fee simple to the eastern part, *as a separate easement or incorporeal heriditament.* A man cannot have a right of way over his own land as something separate from the fee simple ownership; all such rights are considered merged in the ownership of the soil. Consequently, if Waring conveyed away a part of this lot, he did not convey with that, under the head of "appurtenances," a subsisting easement or right of way to go from the part of it which he conveyed to any part of that which remained vested in him. If a man owns a tract of land in fee simple, and afterwards conveys it in separate parcels, that does not carry with it, as incident to it, a right to pass over the remaining part of it. The law does not imply such a right;

it must be expressed. Consequently, also, from the very nature of the case, if land is subdivided in that way, and the alley or road touches only one part of the land, it cannot be an appurtenance to any part of that land which it does not bind upon and in connection with which it cannot be used. It is therefore impossible to see how the conveyance of the western half of the lot, either by Waring directly, or by him through trustees, could give any right of way to pass over the eastern half of the lot to the alley, which only touched it on the east.

These are conclusions which seem to us to follow irresistibly from elementary principles, and they are amply sustained by authority. In the case of Oliver *vs.* Hook, 47 Maryland, 301, it appeared that the owner of a tract of land had been in the habit of using a road from one part of his land to another. Afterwards, he subdivided and sold it, and the grantee of one of the subdivisions claimed the right to use the way over the other parts as against the other grantees. But the court, in speaking of the plaintiff's title, says:

"The deed is for a specific piece of land, being a parcel of a larger piece held and owned by the grantor, and described by metes and bounds. In such case, in the absence of apt and express terms, no specific way outside the limits of the land granted, if not properly an existing easement, will pass as appurtenant. The only words in the deed to Minnick that could possibly be relied on to convey the right of way in question, are, 'all and every the rights, privileges, appurtenances and advantages to the same belonging, or in any wise appertaining.' If there was a way belonging to the estate, as a pre-existing easement, such way would pass by force of these terms, or even without the use of them; but such terms used in a conveyance of part of a tract of land, as in this case, will not create a new easement, nor give a right to use a way which had been used with one part of the land over another part, while both parts belonged to the same owner, and constituted an entire estate. A party cannot have an easement in his own land, as all the uses of an easement are fully comprehended and embraced in his gen-

eral right of ownership. Whalley *vs.* Thompson, 1 Bos. & Pul., 371; Gayetty *vs.* Bethune, 14 Mass., 49; Grant *vs.* Chase, 17 Mass., 443; Pheysey *vs.* Vicary, 16 M. & W., 483; Worthington *vs.* Gimson, 2 El. & El., 624; Thompson *vs.* Waterlow, L. Rep., 6 Eq. Cas., 36. If apt and appropriate terms had been used in the deed, such as 'with the ways now used,' or 'used with the land hereby conveyed,' they would have passed the right to such ways as had been actually used in connection with the part granted; not, however, as existing easements, but those terms would have operated to create new easements for the benefit of the estate granted. Washb. on Eas. (3d ed.), 59.

"The general principle is, that no right in a way, which has been used during the unity of ownership, will pass upon the severance of the tenements, unless proper terms are employed in the conveyance to show an intention to create the right *de novo*. Pearson *vs.* Spencer, 1 B. & S., 571."

It is, therefore, we think, very clear that when the western part of this lot was conveyed, there was only one of two ways in which a right could have been conveyed to pass over the land remaining in Waring to the public alley; one was by granting it expressly; another would have been by granting the land under such circumstances that the grantee could have had no way out to a public highway except through the land retained in the grantor, and that would be called a way of necessity. But that could not apply to this case, because the entire front of the lot conveyed was upon E street, a public highway, so that there was no necessity for a way over the defendant's land to reach a public highway.

We have had several cases cited to us, on behalf of the plaintiff, to establish the general proposition that where a use is appurtenant to a tract of land, which tract is subsequently subdivided and sold, the appurtenance belongs to all the conveyed parts. And that is perfectly true where, from the nature of the case, the way is capable of being used by all the parts, as where they all border upon a public way. A case particularly relied upon by the plaintiff was

that of Watson *vs.* Bioren, 1 Serg. & Rawle, 227. In that case, there was a lot fronting on a public street, which lot ran back to an alley. The owner sold off the larger part and retained part at the rear corner, binding the alley. There it was held, of course, that as every part on the alley had a right to use it, the part which the owner retained had the privilege. There were also several other cases relied upon by the plaintiff: Lansing *vs.* Wiswall, 5 Denio, 218; Underwood *vs.* Corney, 1 Cushing, 592; and Kilgour *vs.* Ashcorn, 5 Harris & Johnson, 82; in all of which it appears that the parcels into which the original tracts had been divided were all bordering upon a highway or private way, or so attached as to be capable of being used in connection therewith. Those cases are clearly not applicable here. Here the land granted could not be used in connection with the way without an additional grant of a right of way over that portion the title to which was retained in Waring.

With these views, we think it is apparent that the plaintiff cannot maintain this action upon the facts shown. He had no title to this right of way, and therefore there was error in the refusal of the court to give the jury the 10th instruction on behalf of the defendant, which was as follows:

"If the jury find from the evidence that the property of the plaintiff does not extend to the western terminus of the right of way granted by the deed of Kerr to Oswald, and that the terminus of such way is not, at any point, on the land of said plaintiff, but that there is a space of not less than nine feet between the terminus of said way, as described in the terms of the grant, and the east line of plaintiff's premises, they must find for the defendant."

We think that, with the views of the law which we hold, that instruction ought to have been granted. We think also that it was error, for the same reason, to refuse the 7th instruction, asked on behalf of the defendant, which was to the effect that there was a variance between the pleadings and the proof as to the location and terminus of the alleged right of way, and for that reason the verdict of the jury should have been for the defendant. The allegation in the

declaration is that the plaintiff had a right of way extending to his premises, while the proof is, that the right of way upon which he relied did not come within nine feet of his premises; so that there was a variance between the declaration and the proof.

This conclusion of ours is decisive of the case, and we do not know that it is necessary to say anything more about it. But perhaps it may be just as well to advert briefly to one or two other features.

It appears in proof that while Dr. Waring owned this property, he built a brick stable on the north end of the lot, about 25 feet square, and that that stable covered over the entire space through which the lot would have to be reached from this alley, and covered over part of the alley itself. Even if it should be assumed that the right of way existed as an easement, from the public alley all the way to the western part of the plaintiff's lot, while the land was owned by Dr. Waring, yet nothing is better settled than that the owner of an easement in land can abandon or extinguish it if he chooses. I do not know of any more effectual way of extinguishing such a right of way than blocking it up as by the brick stable spoken of. Having extinguished or abandoned it, if he sells the property afterwards to another, there is no longer a right of way incident to it; it is gone; In this case, it is apparent, from the facts, that this right of way, as far as it could be considered a right, to the north-western part of the lot, was effectually destroyed by this structure.

The defendant below asked the court to instruct the jury that if they find, that the said Waring, while he was the owner of both tracts now in controversy, erected the stable, as claimed by the said defendant, on said premises, and that said stable extended over the entire right of way on the east half of said lot 7, as far as the east line of said defendant's premises, and also over not less than nine feet of the west half of said lot 7, and that said stable has been continued up to the present time, then the plaintiff is not entitled to recover, and your verdict should be for the defendant.

We are not so sure that that ought not to have been put in a conditional instead of being in an absolute form. But the principle involved in the instruction is correct—that if the stable did cover all the way, so as to make it impracticable to use it, then it did extinguish the right of way, and it did not exist at the time the trustees conveyed the western part of the lot to Callan, the grantor of the plaintiff. The plaintiff may say that he looked at the record title of the property and did not see any evidence of any extinguishment of the right of way. But that is not sufficient. He was bound to see the condition of the lot, and see that there was a brick stable on it obstructing any access to the alley. That doctrine is plainly stated in Vogler *vs.* Geiss, 51 Md., 408. The plaintiff says that after this stable was built, the right was exercised by him of passing through a door in the northwest corner of the stable, so as to obtain access to the public alley. That, however, is not the right of way claimed in the declaration, but something entirely different.

From what I have already said, it is obvious that no title has been made out to that right of way. If it was used under a license, that was revocable, and the length of use was wholly insufficient to make out title, because it did not last more than eleven or 12 years. The door was closed between 1862 and 1873. So that there is no evidence of title, even if there was no variance between the right of way thus claimed to have been exercised and that which is claimed in the declaration. It might be that the trustees under the deed could have sold the western part of the lot with an express grant of a right of way; but, in point of fact, they did not, and upon the grounds I have mentioned, it is impossible to recognize it.

There is another question upon which we think there was error in the court below, although it is immaterial to affect the result. The brick house was sold, as already stated, " with the lot attached." There was an enclosure connected with this house, and there is very strong ground for believing that that was "the lot attached;" it extended to a point twenty-nine or thirty feet short of the rear line of the entire

lot, making it still more impossible for the plaintiff's grantor to have access from that to the public alley. It was a question of fact for the jury, whether or not that was the lot. The defendant asked the court to instruct the jury that if they find that the fence which enclosed the lot "attached" to the plaintiff's brick house was, at the time of the sale by the trustees to Callan, at the place claimed by the defendant, then their verdict should be for the defendant.

Perhaps that was a little too strong, but the court went just as strongly in the opposite direction, and instructed the jury, that the deed from the trustees to Callan conveyed to him the lot according to the plan of the city, and not a part of it; that is, a strip of land, as wide as the brick house, up to the north line of lot 7, and bounded by the west line of said lot 7, and the east line of said brick house, and this, too, although it might take in nearly two feet of the stable.

We think that was clearly taking the facts away from the jury. It is not material, however, because upon the whole case it is plain the plaintiff had no title to this right of way, and therefore the verdict must be set aside and a retrial awarded.