McLEESE, Associate Judge:
Appellants Nayereh Sahrapour, George Beheshtian, Robert Haas, Haas & Associates, P.C., and Sovereign Title Company appeal from orders granting summary judgment to appellees Shaw Centre, LLC and LesRon, LLC and vesting title to a disputed alleyway in LesRon. Appellants claim that Ms. Sahrapour purchased the disputed alleyway from Shaw Centre and that Shaw Centre acted unlawfully by subsequently purporting to sell the alleyway to LesRon. The trial court held that both the purchase agreement between Ms. Sah-rapour and Shaw Centre and a subsequent deed were unambiguously contrary to appellants’ claim. The trial court therefore refused to consider extrinsic evidence as to the meaning of those documents. We find both the purchase agreement and the deed to be ambiguous. We therefore remand to the trial court for further proceedings.
I.
The following facts are undisputed. Shaw Centre owned two adjacent buildings, one at 1230 9th Street, NW and one at 1232 9th Street, NW. An alleyway that is approximately four feet wide runs between the buildings. In May 2006, Shaw Centre agreed to sell 1230 9th Street to Ms. Sahrapour. Attorney Robert Haas represented Ms. Sahrapour in the transaction. The purchase agreement states that 1230 9th Street consisted of “approximately 3,027 square feet of land ... legally described as Lots 878, Block/Square 0368, Map 40 C.” The property located at 1230 9th Street measures 3,026.4 square feet when the alleyway at issue is included and 2,777.5 square feet when the alleyway is excluded. The purchase agreement further states that it is binding and that “the provision hereof shall survive the execution and delivery of the deed aforesaid and shall not be merged therein.”
Mr. Haas prepared the deed for the sale of 1230 9th Street. The deed states that Shaw Centre conveyed to Ms. Sahrapour “Lots 21 and 28 in Ambrose Roth’s Subdivision of Lots in Square 368.” Lots 21 and 28 in Square 368 describe the property located at 1230 9th Street without the alleyway; the alleyway is located in Lot 22. The deed also identifies the tax lot as “Square 368, Lots 877 and 878.” Tax lot 877 does not exist, and tax lot 878 describes only the front portion of the property located at 1230 9th Street. The back portion of 1230 9th Street and the disputed alleyway lie in tax lot 885. The deed also states that the property was conveyed *707 “TOGETHER WITH all improvements thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.” The deed was recorded in October 2006.
In May 2007, Shaw Centre contracted to sell the adjacent property located at 1232 9th Street to Ronald and Leslie Schreiber, owners of LesRon. The original purchase agreement describes the property to be conveyed as “1232-9th Street, Northwest Washington DC Square 0368 Lot 0885.” At some point after the purchase agreement was signed, Ms. Sahrapour’s husband, George Beheshtian, informed Mr. Schreiber that Ms. Sahrapour had already purchased the alleyway between 1232 9th Street and 1230 9th Street. Mr. Haas also informed LesRon’s counsel of Ms. Sahrap-our’s claim. Shaw Centre and LesRon subsequently modified the purchase agreement to explicitly include the alleyway. A special warranty deed reflecting the sale of 1232 9th Street was recorded on August 14, 2007. The alleyway is included in the property description in this deed.
Mr. Haas subsequently amended the October 2006 deed between Shaw Centre and Ms. Sahrapour to specifically reflect the conveyance of the alleyway to Ms. Sahrap-our. Mr. Haas changed the designation from tax lot 877 to tax lot 885. He also added that “a portion of Lot 22 as shown on the attached survey” was conveyed to Ms. Sahrapour.
LesRon sued appellants, seeking a declaration that the amended deed was void; money damages for slander of title; money damages for trespass; and a permanent injunction enjoining further trespass. Ms. Sahrapour and Mr. Beheshtian brought a cross-claim against Shaw Centre, seeking damages for breach of contract; an order requiring Shaw Centre to record a deed or ■instrument confirming the boundaries of the property that Ms. Sahrapour had purchased; an order quieting title in and to the disputed alleyway; and indemnification if LesRon prevailed in its suit.
Appellants proffered extrinsic evidence in support of their claim that Ms. Sahrap-our purchased the alleyway. . Specifically, appellants claimed that the real-estate agent stated that the alleyway was included in the sale; that a location drawing confirmed by both parties at the closing indicated the alleyway was included in the sale; and that Shaw Centre sealed the entrances from 1232 9th Street to the alleyway and provided a key to the door in the back of the alleyway to Ms. Sahrapour. Appellees dispiited appellants’ extrinsic evidence and countered with extrinsic evidence of their own.
The trial court held that the purchase agreement between Shaw Centre and Ms. Sahrapour and the October 2006 deed were both unambiguous and that extrinsic evidence therefore could not be considered. The trial court also concluded that the purchase agreement merged with the October 2006 deed and that the October 2006 deed therefore represented the final written agreement between the parties. The trial court granted summary judgment in favor of appellees, vested title to the alleyway in LesRon, and declared the amended deed prepared by Mr. Haas void.[1]
*708 II.
We interpret contracts and deeds under the “objective” law of contracts, meaning that the written language of the contract “govern[s] the rights and liabilities of the parties, regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite under[stand]ing, or unless there is fraud, duress, or mutual mistake.” DSP Venture Grp., Inc. v. Allen, 830 A.2d 850, 852 (D.C.2003) (internal quotation marks and brackets omitted); see also Joyner v. Estate of Johnson, 36 A.3d 851, 855 (D.C.2012) (applying “objective” law of contracts to deeds).
We review de novo a trial court’s ruling as to whether a contract or deed is ambiguous. Joyner, 36 A.3d at 857; BSA 77 P Street LLC v. Hawkins, 983 A.2d 988, 993 (D.C.2009). A contract or deed is ambiguous if “it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings.... ” Joyner, 36 A.3d at 856 (internal quotation marks omitted). A contract or deed is not ambiguous if “the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.” Id. (internal quotation marks omitted).
If a court determines that a contract or deed is ambiguous, “the court— after admitting probative extrinsic evidence — must determine what a reasonable person in the position of the parties would have thought the disputed language meant.” Dyer v. Bilaal, 983 A.2d 349, 355 (D.C.2009) (internal quotation marks omitted); see also Foundation for Preservation of Historic Georgetown v. Arnold, 651 A.2d 794, 796 (D.C.1994).[2]
III.
A.
We turn first to the purchase agreement between Shaw Centre and Ms. Sahrapour. The trial court concluded that the purchase agreement “merged” with the deed, and that the deed therefore was the document that determined the rights of the parties with respect to the property at issue. It is true that, in general, the provisions of a purchase agreement that are satisfied by the delivery of a deed merge into a subsequently delivered deed. Haviland v. Dawson, 210 A.2d 551, 554 (D.C.1965). Such merger would “extinguish” the parties’ rights under the purchase agreement. Burka v. Crestview Corp., 321 A.2d 853, 855 (D.C.1974). In the present case, however, the purchase agreement states that the agreement “shall not be merged” with the deed. Thus, the provisions of the purchase agreement do not merge into the deed, and appellants remain free to assert rights *709 arising under the purchase agreement. See, e.g., Meyers v. Antone, 227 A.2d 56, 57 (D.C.1967) (rejecting argument that sales contract merged into deed, because sales contract stated that provisions of sales contract “shall not be merged” into deed).
We further conclude that the purchase agreement is ambiguous as to whether the alleyway was included in the sale. The purchase agreement states that 1230 9th Street consists of “approximately 3,027 square feet of land ... legally described as Lots 878, Block/Square 0368, Map 40 C_” Nothing in the agreement — neither the street address, nor the square footage, nor the tax lot number— unambiguously indicates the boundaries of the property to be conveyed. The street address does not indicate whether the alleyway was to be included in the conveyance, because the alleyway is immediately adjacent to the building at that address and could reasonably be considered part of the address. The approximation of 3,027 square feet does not by itself clearly establish whether the alleyway was included, because the agreement does not specify how that approximation was reached. The approximation does tend to suggest, however, that the alleyway was intended to be included in the conveyance, because it is undisputed that 1230 9th Street measures 3,026.4 square feet with the alleyway and 2,777.5 square feet without the alleyway.[3] Finally, the tax-lot number does not indicate whether the alleyway was included, because the parties concede that the tax-lot number does not accurately indicate the boundaries of the property to be conveyed. Tax lot 878 corresponds to the front portion of the property, but does not encompass the back portion of the property, which everyone agrees was intended to be conveyed. Because nothing in the purchase agreement clearly indicated whether the alleyway was included in the property to be conveyed, reasonable parties could have had different beliefs about whether Ms. Sahrapour had contracted to purchase the alleyway. Thus, we conclude that the purchase agreement is ambiguous on that point.
The trial court indicated that, even if there were ambiguity, extrinsic evidence may not be considered unless there is clear and convincing evidence of mutual mistake. We disagree. Extrinsic evidence may be admitted either in the face of ambiguity or in cases of mutual mistake. E.g., DSP Venture Grp., 830 A.2d at 852 (the lan-. guage of a contract governs “unless the written language is not susceptible of a clear and definite understanding], or unless there is fraud, duress, or mutual mistake”) (emphasis added).
Appellants argue that, once extrinsic evidence is considered, the purchase agreement should properly be understood to include the alleyway. Appellants further argue that they obtained equitable title to the alleyway when the purchase agreement was executed. The trial court did not address these issues, and we leave them for the trial court on remand.
*710 B.
We next turn to the interpretation of the October 2006 deed. The deed stated that Shaw Centre conveyed to Ms. Sahrapour “Lots 21 and 28 in Ambrose Roth’s Subdivision of Lots in Square 368.... TOGETHER WITH ... the alleys ... thereto belonging, or in anywise appertaining....” The disputed alleyway is immediately adjacent to Lots 21 and 28. The deed does not indicate whether this alleyway is an alleyway belonging or in anywise appertaining to the property otherwise to be conveyed. This reference to alleyways contributes to our conclusion that the deed is ambiguous. See Annapolis Rds. Prop. Owners Ass’n v. Lindsay, 205 Md.App. 270, 45 A.3d 749, 758-70 (Md.Ct.Spec.App.2012) (affirming trial court’s rulings that (1) plain language of deed transferring lot 19 and alleys and ways “belonging or in anywise appertaining” was ambiguous as to whether deed transferred strip of land adjacent to lot 19; and (2) after consideration of other evidence, deed was properly interpreted to transfer adjacent strip of land), ajfd in part and rev’d in part on other grounds, 431 Md. 274, 64 A.3d 916 (2013); Kirkpatrick v. Brown, 59 Ga. 450, 450-53 (1877) (deed that transferred south half of lot 27, with “the rights, members, and appurtenances thereof ... belonging, or in anywise appertaining,” was ambiguous as to whether deed transferred strip of property adjacent to south half of lot 27; trial court appropriately permitted consideration of extrinsic evidence, and jury permissibly found that adjacent strip of property was alleyway transferred by deed).
Moreover, the deed identifies the tax-lot numbers of the conveyed property as “Square 368, Lots 877 and 878.” Tax lot 877 does not exist, and tax lot 878 makes up only a part of Lots 21 and 28. Because tax lot 877 does not exist and tax lot 878 is smaller than Lots 21 and 28, the physical descriptions of the property in the deed are unclear and to a degree contradictory. The parties have not cited, and we have not found, local cases addressing whether such conflicts create ambiguity permitting consideration of extrinsic evidence. Other courts, however, have held that deeds were ambiguous, and extrinsic evidence therefore was properly considered, where the property description in the deed was incomplete or contradictory. See, e.g., Everett v. Bosch, 241 Cal.App.2d 648, 50 Cal.Rptr. 813, 818 (Dist.Ct.App.1966) (deed ambiguous because description of property by metes and bounds conflicted with description of property by lot number); Grimes v. Jordan, 260 S.W.2d 220, 223-24 (Tex.Civ.App.1953) (same); Snow v. Gallup, 57 Tex.Civ.App. 572, 123 S.W. 222, 224-26 (1909) (extrinsic evidence admissible where description of property in deed omitted one of property descriptors necessary to enclose area intended to be conveyed).
Appellees argue that the problems with the tax-lot numbers in the deed do not give rise to ambiguity, because property in the District of Columbia must be described in terms of subdivision lot numbers. Although properties may be described in terms of subdivision lot numbers, appellees have not cited any provision that requires that means of describing property. See D.C.Code § 1-1322 (2012 Repl.) (purchaser of subdivided property may refer to plat and record in describing property). Nor have appellees cited any authority suggesting that references to the subdivision lot numbers is dispositive even in the face of other contradictory or ambiguous descriptions of the property to be conveyed. We therefore are unable to accept appellees’ contention that the subdivision lot numbers are controlling in the current setting.
*711 We need not decide whether the problems with the tax-lot numbers in the deed by themselves would suffice to render the deed ambiguous. Rather, we hold that ambiguity is created by the combination of those problems and the deed’s language about the conveyance of alleyways.
C.
The dissent concludes that, despite the errors and conflicts in the descriptions of the conveyed property, both the purchase agreement and the deed are so unambiguous as to preclude consideration of extrinsic evidence. Our analysis differs from the dissent’s in a number of respects.
1. Although the dissent apparently would require a high degree of ambiguity before permitting consideration of extrinsic evidence, our cases provide substantial support for a less rigid approach. See, e.g., Aziken v. District of Columbia, 70 A.3d 213, 219 (D.C.2013) (“Where there is some lack of clarity in the terms of the contract, testimony regarding the intent of the parties and the meaning of the terms in the context may be required, and will properly be admitted in order to reach an objective interpretation.”) (brackets, ellipses, and internal quotation marks omitted).
2. The dissent understands Section 203 of the Restatement of Contracts (Second) to forbid consideration of extrinsic evidence to resolve a conflict between more specific and more general contract terms. We understand Section 203 otherwise. In the first comment to Section 203, the authors of the Restatement explain that the principles of contract interpretation reflected in Section 203 “apply only in choosing among reasonable interpretations. They do not override evidence of the meaning of the parties, but aid in determining meaning or prescribe legal effect when meaning is in doubt.” Restatement (Second) of Contracts § 203, cmt. a (1981). More specifically, comment e to Section 203 states that the rule favoring specific terms over general terms “yields to manifestation of a contrary intention.” Id. at cmt. e. Section 203 therefore does not support a rule that extrinsic evidence may never be considered to help resolve a conflict between more specific and more general contract language. Although the dissent suggests that this court adopted such a flat rule in Abdelrhman v. Ackerman, 76 A.3d 883, 891 (D.C.2013), we disagree. The court in Abdelrhman stated only that “greater weight” is given to specific language, not that such language must always be given controlling weight. Moreover, the court rested primarily on the conclusion that the allegedly conflicting language could be reconciled. Id. at 890-91. Out-of-jurisdiction authority supports the conclusion that extrinsic evidence may in appropriate circumstances be considered in resolving a conflict between general and more specific contractual language. See, e.g., Yerington v. LaZ-Boy, Inc., 124 S.W.3d 517, 521-23 (Mo.Ct.App.2004) (finding contract ambiguous where apparent conflict between general language and more specific language; reversing for trial court to consider extrinsic evidence); Mulla v. Maguire, 65 Conn.App. 525, 783 A.2d 93, 99 (2001) (“Because the conflict between the specific intent clause and the map showing the right-of-way and the general granting clause introduces some ambigui *712 ty into the instrument, we also consider extrinsic evidence .... ”); see generally, e.g., Thompson on Real Property § 90.02(d)(1) (3d Thomas ed. 2013) (The “presumption favoring specific description will prevail unless it appears that the parties intended otherwise.... ”).
3. Similarly, the dissent appears to interpret Section 203 of the Restatement to preclude consideration of extrinsic evidence to resolve a conflict between a handwritten contract term and a typed or printed contract term. The commentary to the Restatement contradicts such an interpretation. Restatement (Second) of Contracts § 203, cmt. f (1981) (rule generally favoring handwritten contract terms “yields to manifestation of a contrary intention”).
4. The dissent further suggests that the descriptions of the property using subdivision square and lot numbers as a matter of law trump the descriptions using tax lot numbers. That is so, according to the dissent, because (a) subdivision lots in the pertinent square are on average smaller than the tax lots in that square; (b) each subdivision lot is wholly contained within a single tax lot; (c) references to subdivision lots are therefore more specific than references to tax lots; and (d) references to subdivision lots therefore control and preclude the admission of extrinsic evidence to help resolve the conflicting descriptions. As we have already explained, we do not agree that the more specific of two conflicting descriptions of property will necessarily control, without regard to other indications of the parties’ intent, including extrinsic evidence where appropriate. Leaving that aside, subdivision lot numbers and tax lot numbers seem comparably specific ways to describe the location of a property. Although the dissent indicates that each subdivision lot is contained within a single tax lot, that is not clear to us from the record. Moreover, we see no reason why controlling weight should be given in this case to the references to subdivision lots simply because subdivision lots are on average smaller than tax lots in the particular square where the property is located. Nor are we aware of any authority supporting such an approach. See generally, e.g., 14 Powell on Real Property § 81A.05[3][c], at 81A-97 (2015) (“The practical difficulty in employing [the rule favoring specific language over general language] is the determination of which language is more general and which is more specific. [In some eases,] ... the descriptions seem to be equally general[, and the] selection of one over the other depends largely on the opinion and viewpoint of the finder of fact.”) (citation omitted).
5.The dissent also concludes that the parties intended the subdivision lot numbers to be controlling, because subdivision lot numbers are used in recording deeds, whereas tax lot numbers are used “only for the taxation of real estate.” Although subdivision lot numbers are a permissible way to describe property for real-estate purposes, there is no requirement that they be used. See, e.g., D.C.Code § 1-1322 (2012 Repl.) (permitting but not requiring use of subdivision square and lot numbers). Moreover, it is not unusual for parties to use tax lot numbers to describe property being conveyed. *713 See, e.g., Mueller v. Bohannon, 256 Neb. 286, 589 N.W.2d 852, 855-56 (1999); Howe v. Greenleaf, 260 Or. App. 692, 320 P.3d 641, 649-50 (2014). We see no basis to infer that the parties intended to give the subdivision lot numbers controlling effect in the event of a conflict with the tax lot numbers. Nor, for that matter, are we aware of authority holding that subdivision lot numbers are generally to be given preference over tax lot numbers.
6. The dissent states that “metes and bounds generally control when they conflict with other descriptions of land unless ... the metes and bounds descriptions themselves are incomplete.” This case, however, does not involve “metes and bounds” descriptions. See, e.g., B. Garner, Black’s Law Dictionary 1141 (10th ed.2009) (defining “metes and bounds” as “[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties”); 14 Powell § 81A.05[2][b], at 81A-83 (discussing “metes and bounds” method of describing real property). Rather, the conflicting descriptions in this case involve two different systems by which the government designates parcels of real property. See generally, e.g., 14 Powell § 81A.05[2][d], at 81A-92 (describing use of “plats” to describe real property); 11 C.J.S. Boundaries § 16 (2008) (“A ‘plat’ is a subdivision of land into lots, streets, and alleys, marked upon the earth, and represented on paper.”). More generally, it is true that some courts have identified various canons of construction concerning the relative weight to give to differing types of property description when a document contains conflicting descriptions. See generally, e.g., 14 Powell § 81A.05[3][a], at 81A-94- to -111. This court does not appear to have squarely addressed the issue, however. Moreover, according to one treatise, “some of [these canons of construction] are of questionable merit or have fallen into disuse.” Id. at 81A-94. According to the same treatise, “it is essential that a court first attempt to determine and interpret the intention of the parties from the documents and the surrounding circumstances before applying any of the canons of construction.” Id. at 81A-95. We need not delve further into these issues in this case, except to say that, for the reasons we have explained, we conclude that the purchase agreement and the deed in this case are ambiguous and that extrinsic evidence should therefore be considered to help determine their meaning.
7. In Everett, 50 CahRptr. at 818, the court concluded that a deed containing conflicting descriptions of the property to be conveyed was ambiguous. The dissent suggests that Everett rests on unusual features of California law, but the features the dissent identifies are not relevant to the pertinent holding of Everett— that extrinsic evidence may be consulted when a deed contains two conflicting descriptions of the property to be conveyed. 50 CaLRptr. at 818. In any event, there is ample other authority to the same effect. See generally, e.g., 12 Am.Jur.2d Boundaries § 103, at 478 (2009) (“Parol evidence is always admissible to explain conflicts between calls in a description [of real property being conveyed], or a variance be *714 tween a description of land in the deed and the plat or map of the land referred to therein ....”) (citing eases); 28 Am.Jur.2d Deeds § 249, at 255-56 (“If there are conflicting descriptions which cannot be reconciled, that construction will be adopted which best comports with the manifest intention of the parties as shown by the whole deed and the circumstances of the case.”) (citing cases); cf. 28 Am.Jur.2d Deeds § 194, at 217 (“[A]ll uncertainties in a conveyance are treated as ambiguities to be clarified by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time.”) (citing eases); 11 C.J.S. Boundaries § 3, at 72 (“The important and controlling consideration, where there is a conflict as to a boundary, is the parties’ intention, whether express or shown by surrounding circumstances.”).
8. The dissent expresses the view that the purchase agreement placed on the buyer the burden of ensuring the correctness of the legal description of the property. Specifically, the dissent relies on provisions in the purchase agreement indicating that the property was being sold “as is.” Those provisions, however, are by their terms focused on the condition of the property, not on the legal description of what property was being conveyed. See, e.g., Pitre v. Twelve Oaks Trust, 818 F.Supp. 949, 951 (S.D.Miss.1993) (“ ‘As is’, when utilized in the sale of real property, means the property will be sold in its then existing physical condition.”). We therefore do not view the “as is” clauses as fatal to appellants’ claims that, properly interpreted, the purchase agreement and the deed conveyed the alley at issue.
9. Finally, we disagree with the dissent’s interpretation of the clause in the deed conveying not only the property otherwise described but also “the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.” According to the dissent, such language can only create an easement, as opposed to determining the boundary of the land being conveyed. The sole District of Columbia case cited by the dissent, however, involves circumstances critically different from those of the present case. See May v. Smith, 14 D.C. (3 Mackey) 55, 59-60 (1884). The question in May was whether a deed conveying described property and “ways, rights, ... and appurtenances unto the same” also conveyed title to, or an easement over, a strip of land retained by the seller, in order to get access to a nearby alley. Id. at 56. The deed did not refer to the alley, the alley was not adjacent to the property described in the deed, and there was no preexisting way across the strip of land at issue. Id. at 55-64. May therefore does not support a conclusion that language explicitly conveying alleys belonging or in anywise appertaining to a described property can never convey title to an alley adjacent to the described property. Moreover, contrary to the dissent’s suggestion, the Maryland Court of Special Appeals in Annapolis Roads Property Owners Ass’n squarely held, on the basis of all of the relevant circumstances including extrinsic evidence, that a deed conveying *715 alleys and ways “belonging or in anywise appertaining” to the property otherwise described in the deed conveyed title to a strip of land adjacent to the described property. 45 A.3d at 751 & n. 1, 759, 768, 787 (strip of land at issue was “between Lots 18, 19, 20, and 21,” but title to strip of land was conveyed by deed conveying Lot 19 and alleys and ways “belonging or in anywise appertaining”). To be clear, we do not hold as a matter of law that the deed in this case granted appellants title to the alley. A substantial body of out-of-jurisdiction law addresses whether references in particular deeds to roads, ways, alleys, rights-of-way, or other related items convey title or instead only create an easement, and the answer to that question can be very context-dependent. See, e.g., Barber v. Southern Ry. Co., 247 Ga. 84, 274 S.E.2d 336, 337 (1981) (“It is true that in determining whether an interest conveyed is an easement or fee simple title to land, each case depends on its own particular facts and circumstances.”); see generally A.M. Swarthout, Annotation, Deed as Conveying Fee or Easement, 136 A.L.R. 379, § II.b.2 (1942 & 2015 supp.) (language in deed conveying land generally implies grant of title, whereas language conveying right to use land generally implies grant of easement, but other indications in deed, such as reference to land as road, way, or alley can affect interpretation of deed; “The nature of such indic[ations] varies to such an extent from case to case that it seems unwise to attempt to formulate any general rules with respect to the effect of any given indic[ation] upon the broad principle that a conveyance of a strip or parcel of land, rather than a right, will pass a title in fee.”); see also id. at § Il.d (“It appears to be well established that a deed purporting to convey a ‘road,’ ‘roadway,’ ‘alley,’ ‘street,’ ‘highway,’ or ‘way,’ will, in the absence of some indication] of a contrary intention of the parties, be construed as passing an easement only and not a title in fee. (It should be pointed out, however, that in many of the cases in which this result is reached the decision is not based entirely, or even partly, upon the principle that a deed purporting to convey a ‘road,’ etc., passes only an easement, but upon other indications of the parties’ intention that an easement only should pass.)”). Rather, we hold only that the deed’s language conveying alleys and the deed’s conflicting descriptions of the property to be conveyed combine to make the deed sufficiently ambiguous as to warrant consideration of extrinsic evidence. We leave to the trial court on remand the question whether, under all of the circumstances, the reference to alleys in the deed in this case operated to convey title.
IV.
In sum, we find that both the purchase agreement and the 2006 deed are ambiguous. Extrinsic evidence therefore should be considered in determining the meaning of those documents. We thus remand the case for further proceedings.

So ordered.

Dissenting opinion by Senior Judge NEWMAN at pages 715-16.

. Although the trial court did not resolve all of the claims and counterclaims in the case, we have jurisdiction because appellants seek review of an order "changing or affecting the possession of property.” D.C.Code § 11-721(a)(2)(C) (2012 Repl.). Some of the appellants were not formally parties to this case in the trial court but nevertheless were permitted to participate on the merits because they were parties in closely related cases. The parties dispute whether those appellants have standing to participate in the present appeal. *708 We need not decide that issue, however, because Ms. Sahrapour was a party in the trial court and has standing to raise all of the arguments being raised in this appeal. See, e.g., Hazel v. Barry, 580 A.2d 110, 110 n. 3 (D.C.1990) (because some appellants had standing, court did not need to decide whether another did as well).

. At one time, this jurisdiction drew distinctions between latent and patent ambiguities, permitting extrinsic evidence to be considered in resolving the former but not the latter. See) e.g., Harten v. Loffler, 29 App.D.C. 490, 503 (1907). That rule was long ago abolished in this-jurisdiction. See, e.g., Mitchell v. Merriam, 88 U.S.App.D.C. 213, 215, 188 F.2d 42, 44 (1951) ("Distinctions between 'latent' and 'patent' ambiguities are arbitrary and outmoded.”). We therefore need not decide whether any ambiguities in the documents at issue were latent or patent.

. The parties dispute whether the purchase agreement in this case was a sale "in gross,” i.e., whether the statement of the area to be conveyed was a mere estimate that was not "of the essence of the contract.” See generally, e.g., Cavacos v. Sarwar, 313 Md. 248, 545 A.2d 46, 52 (1988) (internal quotation marks omitted). We have not found any case discussing the "sale in gross” doctrine under District of Columbia law. Under Maryland law, extrinsic evidence is apparently admissible when it is unclear from the face of the contract whether the contract is a sale in gross. See, e.g., Witmer v. Bloom, 265 Md. 173, 288 A.2d 323, 325 (1972). Moreover, even if the purchase agreement in this case were a sale in gross, we would still view the purchase agreement and the deed as ambiguous, for the other reasons stated in text.