NEWMAN, Senior Judge,
dissenting:
Sahrapour failed to properly examine land conveyed by a deed and land pur *716 chase agreement. The two documents may convey smaller parcels of land than Sahrapour subjectively intended to purchase; this court should not intervene to correct her missteps absent a sufficient showing' of ambiguity in the documents. The majority’s opinion departs from this court’s opinion in Abdelrhman v. Ackerman, 76 A.3d 883 (D.C.2013), and implicitly adopts the dissent’s method of resolving inconsistencies and ambiguities. Id. at 893 (McLeese, J., dissenting).
I dissent from the majority’s opinion because, in my view, neither the land purchase agreement nor the deed is sufficiently ambiguous as to permit the introduction of extrinsic evidence. In addition, I conclude that the corrected deed is void and that Sahrapour did not acquire the alley through equitable conversion. I would affirm the trial court’s decision.[1]
Deed
Under the objective law of contracts, this court solely relies on the language of the written document to discern the intent of the parties “unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.” DSP Venture Grp., Inc. v. Allen, 830 A.2d 850, 852 (D.C.2003) (citation and internal quotation marks omitted). Ambiguity exists only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively, and requires consideration of evidence outside the contract itself. Steele Founds., Inc. v. Clark Constr. Grp., Inc., 937 A.2d 148, 153 (D.C.2007).
The Second Restatement of Contracts presents the following method for contract interpretation:
In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
(a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect;
(b) express terms are given greater weight than course of performance, course of dealing, and usage of trade, course of performance is given greater weight than course of dealing or usage of trade, and course of dealing is given greater weight than usage of trade;
(c) specific terms and exact terms are-given greater weight than general language;
(d) separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated.
Restatement (Second) of Contracts § 203 (1981). This court follows § 203 and applies the canon that the specific governs the general when both the general and specific provisions “stand irreconcilably in conflict.” Abdelrhman, supra, 76 A.3d at 891. Unlike the canon ‘construing the contract against the drafter,’ which applies only after considering extrinsic evidence,[2] *717 the ‘specific governs the general’ canon applies before considering extrinsic evidence. Id.
The panel in Abdelrhman split, regarding the amount of ambiguity needed before extrinsic evidence of the parties’ intent was admissible. Judge McLeese dissented in Abdelrhman because he “would hold that, when considered as a whole, the language of the lease at issue was ambiguous and that extrinsic evidence therefore should be considered in interpreting that language.” Id. at 893 (McLeese, J., dissenting). In particular, Judge McLeese’s dissent recognized the ‘specific governs the general canon’ but would not have relied “on the implication of a specific provision as unambiguously trumping the express statement of a more general provision” in this specific case. Id. at 894 (McLeese, J., dissenting). The majority disagreed and found that the two provisions of the lease could be read together, so there was no need to use the ‘specific governs the general’ canon to resolve the inconsistency in the lease language. Id. at 891. Today, the majority’s opinion essentially takes Judge McLeese’s dissent in Abdelrhman and makes it binding precedent, in derogation of M.A.P. v. Ryan, 285 A.2d 310 (D.C.1971).
There are two provisions in the deed that stand irreconcilably in conflict, the description of the land, “Lots 21 and 28 in Ambrose Roth’s Subdivision of Lots in Square 368,” and the tax lots numbers, “Lot 878 in square 868” and “Tax ID: Square 368, Lots 877 and 878” (handwritten text in italics). The conflict in tax identification (Tax ID) numbers can be resolved in favor of the handwritten portion, “Lot 878 in square 368.” Restatement (Second) of Contracts § 203 cmt. f (1981) (“It is sometimes said generally that handwritten terms control typewritten and printed terms, and typewritten control printed.”).
The second conflict is between “Lots 21 and 28” and “Lot 878 in square 368.” The individual lot numbers are, on average, smaller and more specific than the Tax ID lot numbers. Square 368 is divided into eighteen lots and eight tax lots so, on average, the lot numbers provide a more specific description of individual pieces of land than the tax lot numbers. The subdivision lots are wholly contained within the tax lots so subdivision lots are more specific than tax lots-not merely a different method to describe the same land. The canon that “specific terms and exact terms are given greater weight than general language” resolves this inconsistency. Restatement (Second) of Contracts § 203(c). The individual lot reflects a smaller parcel of land, and is therefore more specific than the tax lot which reflects, on average, a larger parcel of land.
In addition, the method by which land is recorded in the District reflects the above reading of the deed. In the District of Columbia, the Office of the Surveyor uses lots of record to identify and record land records, but tax lot numbers are only used for the taxation of real estate located in the District of Columbia. D.C.Code §§ 1-1305-1322 (2012 Repl.) (land records); D.C.Code § 47-701 (2012 Repl.) (taxation of real estate). Given that the deed contains two inconsistent descriptions of land — one of which accurately cites to two plots of land in the same form used by the Office of the Surveyor when recording deeds, and the other which cites to a nonexistent tax lot — I conclude that the parties intended the subdivision lot numbers to reflect the scope of the land conveyed by the deed.
The majority’s opinion cites California and Texas cases for the proposition that, when descriptions of land in the deed are *718 in conflict, the more specific terms do not necessarily control. These cases are distinguishable.[3] Despite the majority opinion’s contention otherwise, metes and bounds generally control when they conflict with other descriptions of land unless if the metes and bounds descriptions themselves are incomplete. 11 C.J.S. Boundaries § 84 (2015) (“Metes and bounds in the description of property granted, if established, always control courses and distances.”).
The majority’s opinion also contends that language located at the end of the deed referencing “alleys” supports Sahrap-our’s argument that the deed is ambiguous. The deed states, “TOGETHER WITH all improvements thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.” Courts have held for over 130 years that this language unambiguously states that certain features (easements and covenants) travel with the land.[4] See May v. Smith, 14 D.C. (3 Mackey) 55, 59-60 (1884) (quoting Oliver v. Hook, 47 Md. 301, 308 (1877)).
In May, this court had to consider whether the language in the deed, “together with all and singular the improvements, ways, rights, tenements, and heredita-ments and appurtenances unto the same *719 belonging or in any way appertaining,” conveyed “a right of way over the remaining part to the public alley” that bordered the property described in the deed. Id. at 57. This court relied upon Oliver for the proposition that the deed language, “all and every the rights, privileges, appurtenances and advantages to the same belonging, or in any wise appertaining,” would transfer a pre-existing easement through the deed. Id. at 59 (internal quotation marks omitted) (quoting Oliver, supra, 47 Md. at 308). The factual inquiry that ensued focused on whether there was a preexisting easement over the public alley, not whether the deed conveyed title to the alley. Id. at 59-61.
In my view, as established in May, this unambiguous language is not intended to delineate the exact geographical boundaries of the land, but instead is intended to clarify what features of the property the parties intend to transfer with the deed. I see no reason to depart from 130 years of well-established case law to find an ambiguity in Sahrapour’s deed.
The majority opinion cites Annapolis Rds. Prop. Owner’s Ass’n v. Lindsay, 205 Md.App. 270, 45 A.3d 749, 784 (2012), aff'd in part, rev’d in part sub nom. Lindsay v. Annapolis Rds. Prop. Owner’s Ass’n, 431 Md. 274, 64 A.3d 916 (2013), for the proposition that the above-quoted deed language is ambiguous as to the interest it conveys. I do not read this opinion as does the majority. In Annapolis Roads, the Maryland Court of Special Appeals had to decide whether the “the Strip,” a ten-foot strip of land located between Lots 18 and 19 but wholly contained within Lot 19’s geographic boundaries, was a roadway or a way. Id. at 767. The court did not struggle to understand what features traveled with the land, but rather struggled to define whether “the Strip” was a way, in which case the seller would retain no easement over the way, or a roadway, in which case the seller would retain an easement. Id. at 768. The ten-foot strip at issue in Annapolis Roads clearly fell within the boundaries of Lot 19, so parties did not contest the geographic boundaries set forth in the respective deeds. Id. at 752 & n. 3. The majority is correct that the above-quoted deed language was referenced in the court’s analysis, but it was merely used to assess whether the owner retained any “rights and interests in the beds of roadways,” not whether title to the alley was actually conveyed through the deed. Id. at 768.
In sum, I would affirm the trial court’s ruling that the deed is not ambiguous. I would rely on well-established canons of contract construction and Maryland law to reach this conclusion.
Land Purchase Agreement
The majority’s opinion correctly concludes that the land purchase agreement does not merge with the deed but, in my view, errs in concluding that the agreement’s description of the land is ambiguous.
The land purchase agreement is similar to the deed but differs in two significant ways. First, the purchase agreement does not reference the non-existent Tax ID Lot 877. Second, and more importantly, the purchase agreement states that the property to be sold is approximately 3,027 square feet. The approximately 3,027 square feet measurement is important because the size of Lot 878, referenced in the purchase agreement, is smaller than 3,027 square feet. Regardless of the exact discrepancy in square feet between Lot 878 and the 3,027 square foot description, the parties intended the purchaser to bear the risk that the square footage description may not match the legal description of the land. We need not address whether this *720 jurisdiction will adopt the Maryland “in gross presumption” because the parties’ intent is clear from the purchase agreement.
The purchase agreement describes the relevant property as follows:
The subject of the property, known as 1230 9th Street NW Washington D.C. 20001, is approximately 3,027 feet of land improved with an approximately 3,893 square feet building plus basement located in an area designated as historic in the Election District 2, zoned C2A, and legally described as Lots [sic] 878, Block/Square 0368, Map 40 C in the public land records of the District of Columbia together with the easements, rights, appurtenances belonging to the same, and including fixtures, furnishings, machinery, equipment owned by the Seller situated on or about said property.
Lot 878 does not describe the entire land that was actually transferred to Sahrapour because Lot 878 only corresponds to Lot 28 of the ALTA/ACSM Survey, but the deed transferred both Lot 21 and 28 of the ALTA/ACSM Survey. Regardless of the deviation of Lot 28’s square footage from the approximately 3,027 square foot description, the purchaser bore the risk of the inaccurate description.
The purchase agreement allocates certain risks to the purchaser with the following provisions: “15. LOCAL VIOLATIONS; CONDITION AND OPERATION OF PROPERTY ... Purchaser has inspected the property, is fully familiar with the condition thereof and Purchaser agrees to take the Property AS IS as of the Date of Agreement.” The Addendum to the Real Estate Purchase Agreement (Addendum) also allocates additional risks to the purchaser:
A. FEASIBILITY STUDY PERIOD. The purchaser has a thirty (30) days Feasibility Study Period from the date of this Agreement during which Purchaser can inspect the Property, perform its studies, place financing and perform ministerial duties to settle on the Purchase. During this period, Purchase and its’ [sic] employees, agents or contractors may enter into the Property upon prior notice to 'the Seller for the purpose of inspecting the Property, performing surveys, studies and ministerial duties it determines are necessary to determine the feasibility of purchasing the Property. Prior to the end of this Period, Purchaser may upon written notice and receipt by Seller or its’ [sic] Agent terminate this Agreement in its’ [sic] sole judgment....
D. CONDITION. The property is sold “as is” except for specific representations and warrantees made by the Seller in this contract.
The Addendum gave Sahrapour thirty days to inspect the property, Lot 28, and allowed Sahrapour to terminate the agreement whereby the deposit would be returned. Since “approximately 3,027 square feet” is not a “specific representation ... made by the seller,” the purchase agreement and addendum place the burden of surveying and inspecting the property on the purchaser, Sahrapour.
Because Sahrapour did not properly inspect and survey the property, which would have revealed the size discrepancy, she now holds title to a piece of land that may be smaller than what she subjectively intended to purchase. Any additional land acquired through the deed is over and above what the parties intended to transfer. The land purchase agreement stated that she would receive Tax Lot 878 and, given that she signed an addendum which *721 sold the land “as is” and gave her permission to survey and inspect the land, she bore the risk that the “approximately 3,027 square feet” description was not accurate.' The fact that Tax Lot 878 is not 3,027 square feet does not create an ambiguity in the description of the property. I would not resort to extrinsic evidence to discern the intent of the parties.[5]
Corrected Deed
Sahrapour contends that the “corrected” deed reflected a. clerical edit because it did not materially alter what was conveyed in the first deed. I do not find that persuasive.
A deed is void when the attorney who drafted the deed exceeded his authority under a general power of attorney. Smith v. Wells Fargo Bank, 991 A.2d 20, 26-27 (D.C.2010). A “clerical error” is “[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; [especially] a drafter’s or typist’s technical error that can be rectified without serious doubt about the correct reading.” ■ Black’s Law Dictionary 659 (10th ed.2014). “Among the numberless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing or omitting an obviously needed word; and failing to log a call.” Id.
The inclusion of “ * and a portion of Lot 22 as shown on the attached survey,” changing the Tax ID to include “and a portion of Lot 885,” and attaching a new survey reveals that a labor requiring original thought was needed to arrive at this edit. Merely changing “Lot 877” to “Lot 885” might be a clerical edit, especially considering Lot 887 does not exist, but these intricate edits were not indicative of mere clerical edits. Because Haas exceeded his authority under the Power of Attorney, I would hold that the -trial court correctly found the “corrected” deed was void.
I respectfully dissent.[6]

. Whether Sahrapour might have other remedies is not an issue before us.

. "Ambiguous language in a contract is generally construed against the drafter, at least where the parties were relatively equal in bargaining power. A party who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him. This canon of construction, known as contra proferentem, is a secondary standard of interpretation, and inferior to extrinsic proof of the parties' agreement, or to other authority revealing that understanding.” American Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc., 655 A.2d 858, 862-63 (D.C.1995) (citations and internal quotation marks omitted).

. Courts often disagree about the degree of ambiguity needed before a court can consider extrinsic evidence to discern the intent of the parties. The majority opinion cites cases from other states that do not follow this court’s method for resolving inconsistencies, and thus reduces the usefulness of those opinions.
Under California law, courts apparently do not apply canons of construction to resolve inconsistencies prior to considering extrinsic evidence. In cases where "metes and bounds [descriptions] clearly conflict!] with its description by lot number,” "consideration may be given not only to actual uses being made at the time of the grant, but also to such uses as the facts and circumstances who were within the reasonable contemplation of the parties at the time of the conveyance.” Everett v. Bosch, 241 Cal.App.2d 648, 50 Cal.Rptr. 813, 818 (Dist.Ct.App.1966) (citation and internal quotation marks omitted). In addition, California law contains unique statutory and common law presumptions whereby "[a]n owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown” and "[t]he grant of land adjoining a street or highway which has been wholly made from, and upon the margin of, the grantor’s land is deemed to comprehend the fee in the whole of the street.” Id. at 817 n. 2, 819 n. 3. (citations and internal quotation marks omitted) ("[A] grantor’s intent to withhold his interest in an alley ... will never be presumed, reasoning that there would be no object in the retention by the grantor of a narrow strip of land, which, when separated from the adjoining land, would be of little or no use to him.”).
The metes and bounds descriptions, referenced in the two Texas cases cited by the majority opinion, were incomplete and problematic so the court therefore could not discern intent solely from those descriptions. Grimes v. Jordan, 260 S.W.2d 220, 223 (Tex.Civ.App.1953); Snow v. Gallup, 57 Tex.Civ.App. 572, 123 S.W. 222, 224 (Tex.Civ.App.1909).

. Maryland courts have held that this language in the deed validly assigns "covenants [or easements] running with the land,” but none have held that this language delineates the boundaries of a property. County Comm'rs of Charles Cnty. v. St. Charles Assocs. Ltd. P’ship, 366 Md. 426, 784 A.2d 545, 568 (2001); see also Olde Severna Park Improvement Ass’n, Inc. v. Gunby, 402 Md. 317, 936 A.2d 365, 373 (2007); Kobrine, L.L.C. v. Metzger, 380 Md. 620, 846 A.2d 403, 414 (2004) (It is well-settled Maryland law that "when a property owner subdivides property and makes or adopts a plat designating lots as bordering streets, and then sells any of those lots with reference to the plat, an implied easement of way passes from the grantor to the grantee ... over the street contiguous to the property sold” (emphasis added) (internal quotation marks omitted)); Conrad/Dommel, LLC v. West Dev. Co., 149 Md.App. 239, 815 A.2d 828, 839 (2003); Gosnell v. Roberts, 147 Md. 625, 128 A. 276, 276-77 (1925); Duvall v. Ridout, 124 Md. 193, 92 A. 209, 210 (1914).

. Sahrapour would not acquire the disputed property through the doctrine of equitable conversion because, in my view, the Land Purchase Agreement does not intend to convey the disputed property, and in any event a valid deed was executed. Under the doctrine of equitable conversion, this court "views a contract of sale as immediately vesting the purchaser with beneficial ownership of the realty, and limiting the property interest of the vendor to the promised consideration ... retaining legal title only as trustee for the purchaser until the deed of conveyance is delivered.” Trustee 1245 13th St., NW No. 608 Trust v. Anderson, 905 A.2d 181, 184 (D.C.2006) (emphasis added) (quoting Gustin v. Stegall, 347 A.2d 917, 922 (D.C.1975)).

. Sahrapour has filed a legal malpractice claim against Haas which is stayed pending resolution of the ownership of the disputed alley. Order to Stay, Sahrapour v. Haas, No. 2011 CA 647 (D.C.Super.Ct. Aug. 30, 2011).